SAMUEL CROSIER, APPELLANT, v. ROBT. McLAUGHLIN AND JOHN FULTON, RESPONDENTS.

The pleadings in this case, properly construed, admit a common possession but deny a common title or right of possession.

When M. and F. act jointly in making a purchase of land, and F. has full knowledge of the nature and character of an equity which R. holds in the land purchased, and M. knows that R. asserts *some* equity but does not know the nature, character or extent of the equity claimed nor the justice of its foundation, still both will be held to have purchased with full knowledge, for M. having heard of the claim of an equity, and having failed to inform himself when having the opportunity to do so, is in no better condition than if fully informed.

It is not in such case using due diligence to rely solely on the assertion of the vendor of the land that R. has no equity.

It is immaterial when a party in possession files his bill claiming that he is a tenant in common with others, asking for a division of the land, etc., whether he shows that he has a legal title in common with the defendants, or only has an equitable title to the one-half of the land described. In either case he is entitled to substantially the same relief.

When a party files a complaint for equitable relief, and the whole case shows it must be determined rather upon the application of legal principles to admitted facts, that on the determination of controverted facts, the case should not be submitted to a jury.

APPEAL from the District Court of the Fourth Judicial District, State of Nevada, Washoe County, Hon. C. C. GOODWIN presiding.

The facts of the case are fully stated in the opinion of the Court.

*North & Harris,* Counsel for Appellants, made the following points in their brief. They are believed to be all which throw any light on the questions decided in this case:

This land was not obtained by deed in the name of either partner, but by mutual possessory acts.

Rice signed the order to the Surveyor, and employed and paid all the men, and directed where the lines should be run

and marked, and simply directed that the certificate of survey should be made in the name of Johnson.

The survey was but *one* of the many acts of possession, and lasted but one year, while Rice continued to exercise acts of ownership, and to be recognized by his partners as an owner for *more than four years.*

The land was held by *Rice* and *Johnson,* not by *title deed* in the name of either, but by the possessory *acts* of both.

Johnson conveyed only his *own interest* in the land. (See deed from Johnson to defendants.)

That deed did not take from Rice even the *legal title.*

*First*—Because Johnson sold only half, as he testifies.

*Second*—Because he had only half to sell, as defendants both knew.

*Third*—The deed only conveys Johnson's interest, and both defendants knew what that interest was.

Defendants being purchasers with notice, even if the deed had conveyed the whole legal title, could not take advantage of that in a suit in equity.

If defendants had been *innocent purchasers* their frequent recognition of Rice as joint owner with them for more than two years, would estop them from disputing his right now.

If defendants had always disputed the right of Rice in the ranch, their recognition of Crosier as an owner of half the ranch estops them from disputing his ownership in this suit. (14 Cal. 208 ; 16 Cal. 345.)

*Thos. Fitch,* for Respondent.

Opinion of the Court by Justice BEATTY, Justice BROSNAN concurring.

The Chief Justice having been counsel in this case did not participate in this decision.

This was a bill filed for partition of real estate among several tenants in common, account of profits, etc.

The bill alleges that the plaintiff and defendants are the owners of the land in question, and are in possession thereof as tenants in common.

The answer denies that "plaintiff and defendants * * are * or ever have been, as tenants in common or otherwise, owners of, and in the possession of, as tenants in common or otherwise, [of] the * * land."

In subsequent portions of the answer there is a denial of the allegation made in complaint that plaintiff was the *owner* of a half interest in the land, and a distinct averment that defendants were owners of the whole tract.  But we do not think this answer is sufficient to deny the fact that plaintiff was, when the suit was commenced, in the joint or common occupancy of the land with defendants, and was *claiming* to be a tenant in common with them.

Indeed, it would seem from the facts developed on the trial, that the answer was not intended to put in issue the allegation that plaintiff was occupying and using the premises in common with defendants, but merely to raise the question of his right to do so.

Whatever may have been the intention of the pleader, we hold this answer does not deny the common occupancy of the plaintiff and defendants, and this must be taken as an *admitted* fact in the case.  The evidence would show this fact with reasonable certainty if it were not admitted, but it frees the case from embarrassment to start out with that as an admitted proposition.

The other facts of the case, about which there is no conflict of testimony, are as follows:

In the Fall of 1860, John Johnson and Peter Rice agreed to locate a timber ranch.  Johnson was to render some personal services in the location and Rice was to pay all the money expenses, and they were to hold the ranch as equal partners, as they both state.

A survey was made at the request of both parties, by the County Surveyor.  Rice paid the Surveyor and chain carriers, and when the survey was completed told the Surveyor to make out the certificate of survey in the name of Johnson, for the reason, as would seem, that Rice held several other land claims, and was apprehensive of some difficulty in holding so much land in his own name.

After the survey was made neither party resided on the

land, and both of them, either in person or by means of hired men, cut timber from the ranch, and contributed labor towards felling trees, so as to make a marked boundary or fence around the ranch to exclude jumpers or other claimants from the premises surveyed. At the time the survey was made one of the defendants, John Fulton, was in the employ of Rice, and was to have assisted as a chain carrier, or something of that sort, in making the survey for Rice and Johnson.

Indeed, Rice, and we believe one other witness, says positively, he did assist in making the survey. Fulton himself says he was sick and did not assist the Surveyor the day this survey was made, but does not deny that he knew it was being made for Rice.

His language is: " Rice and Johnson were going up to have the land surveyed. I was to go, but was sick and did not go," and much more to the same effect.

In the Spring of 1862, there began to be some trouble about maintaining possession of the ranch, and Johnson, to avoid litigation, determined to sell out his interest in the claim. He applied to McLaughlin to buy. McLaughlin, after several conversations, agreed to purchase if Fulton would join him. Finally a deed was made to McLaughlin and Fulton for all the right, title and interest of Johnson in the land. There is nothing in the granting clause of the deed to indicate whether his interest was an entirety or a half interest. One of the covenants of the deed, however, would seem to indicate that he had a right to sell the entire premises described.

When McLaughlin purchased he says he was aware Rice claimed a part of this land, or an interest in it, but professes to have been ignorant of the nature and extent of his claim. He says he asked Johnson, and Johnson told him Rice had no claim; that he, Johnson, had promised Rice half of the land in consideration of a lot in Washoe that Rice was to give him; but Rice had sold the lot and should have none of the land.

McLaughlin claims that Johnson, after this explanation, sold him the whole of the land, declaring Rice had no interest. Johnson, who testifies, denies all this flatly; states positively that he informed McLaughlin he owned one-half of the land and Rice the other half; that he did not pretend to sell but

one-half the land ; that McLaughlin knew he was buying but one-half; but told Johnson that Rice had suggested the deed might be made to him (McLaughlin) for the whole.

After McLaughlin and Fulton purchased they put up a cabin on the land, and they or their hired men occupied the cabin, and other parties attempted to take up the land, and two suits were brought for the land against McLaughlin and Fulton.

The evidence is conclusive that Rice contributed to the defense of those suits, and that with the consent of both defendants.   There is a great deal of other testimony, showing that during two years both defendants, by word and act, recognized the fact that Rice had an interest of some kind in the ranch. In the Spring of 1864 the present plaintiff went on the ranch to assist one of defendants to cut logs for sale.   Whilst so assisting defendants, he bought Rice's interest in the land, and after his purchase, and after a knowledge of such purchase came to the defendants, he was quietly permitted to remain on the ranch to assist in cutting the logs and draw a part of the proceeds of sale of logs.   In many other ways defendants seemed to admit his right of possession there.

On the other hand, whilst this knowledge of Rice's claim, and tacit admission of his equity at least is brought home to defendants, it is stated by McLaughlin, on oath, and corroborated by other testimony, that from the moment McLaughlin got his deed, he began to question Rice's right to half the property and to require Rice to settle or pay to him the amount of an old note and account which he alleges Rice owed him, and which he could not collect because they were barred by the statute of limitation.   There is a great deal of testimony flatly contradicting McLaughlin in many particulars, but without deciding between him and conflicting witnesses, these facts and conclusions may be taken as fully established:

*First*—When Johnson executed the deed to Fulton and McLaughlin, Fulton knew exactly the nature and character of Rice's interest in the land.

*Second*—McLaughlin knew Rice *claimed* an interest in the land, and he had it fully in his power to inform himself of the nature of that interest.

Rice lived in that neighborhood, he could have inquired of him, or in his absence from home, of his agent. He could inquired of his own partner, who was conversant with the whole transaction.

It was not using diligence on his part (after having heard of an equity in favor of Rice) to rely solely on the representation of Johnson. If Johnson was trying to make a fraudulent sale of land, in which Rice had an interest, of course he was not the one of whom to make inquiry about Rice's title or equity. Fulton had full notice McLaughlin had such as to put him on inquiry, and he either was fully informed of the equity or willfully and fraudulently kept himself in ignorance.

Under the Utah Statutes about surveys, and the rights acquired under them, and all the circumstances attending this case, it might be a difficult point to determine whether Johnson and Rice should be considered as tenants in common of this ranch, or Johnson considered as holding the legal title (so far as possession of public land can give title), with a resulting trust in favor of Rice for one-half of it.

In either event the rights of Crosier are the same. If they were tenants in common, the deed of Johnson only conveyed a half interest to McLaughlin and Fulton. If Johnson had the entire legal title, then he held one-half interest in trust for Rice, and they being purchasers with notice held it the same way.

The plaintiff is entitled to the relief sought in his bill.

This case was submitted to a jury and they brought in a general verdict for defendants. On this verdict a judgment for costs was entered against plaintiff. The plaintiff moved for a new trial, which the Court refused, and he appeals both from the judgment and order overruling the motion for new trial. The Judge who tried the case in the Court below seems to have refused a new trial, not because he was satisfied with the verdict, but because it was the second jury that had given the same verdict. Were it a common law case, that would be a very strong reason for not granting a new trial; but this was a chancery case that did not involve any important issues of fact. It depended on the application of legal principles which a jury were incapable of determining. It should never have been submitted to a jury.

23

The judgment for costs and dismissal of complaint is set aside.

The Court below will decree a partition of the property, and take such steps as may be necessary to adjust the accounts between the parties, and give such other relief as the nature of the case may require.