CURTICE BROTHERS' COMPANY

*v.*

JAMES E. CATTS et al.

[Submitted April 2d, 1907. Decided May 3d, 1907.]

Where no adequate remedy at law exists, specific performance of a contract by defendants will be decreed on their refusal to sell tomatoes grown on certain land, as agreed, where it leaves the company helpless, except to whatever extent an uncertain market may supply the deficiency.

On final hearing, pleading and proofs.

Complainant is engaged in the business of canning tomatoes and seeks the specific performance of a contract wherein defendant agreed to sell to complainant the entire product of certain land planted with tomatoes. Defendant contests the power of this court to grant equitable relief.

*Mr. Jonathan W. Acton,* for the complainant.

*Mr. William T. Hilliard,* for the defendants.

LEAMING, V. C.

The fundamental principles which guide a court of equity in decreeing the specific performance of contracts are essentially the same whether the contracts relate to realty or to personalty. By reason of the fact that damages for the breach of a contract for the sale of personalty are, in most cases, easily ascertainable and recoverable at law, courts of equity in such cases withhold equitable relief. Touching contracts for the sale of land the reverse is the case. But no inherent difference between real estate and personal property controls the exercise of the jurisdiction. Where no adequate remedy at law exists specific per-

formance of a contract touching the sale of personal property will be decreed with the same freedom as in the case of a contract for the sale of land. Professor Pomeroy, in referring to the distinction, says:

"In applying these principles, taking into account the discretionary nature of the jurisdiction, an agreement for the sale of land is *prima facie* presumed to come within their operation, so as to be subject to specific performance, but a contrary presumption exists in regard to agreements concerning chattels." *Pom. on Cont.* § *11.*

Judge Story urges that there is no reasonable objection to allowing the party who is injured by the breach of any contract for the sale of chattels to have an election either to take damages at law or to have a specific performance in equity. *2 Story Eq. Jur. (13th ed.)* § *717a.* While it is probable that the development of this branch of equitable remedies is decidedly toward the logical solution suggested by Judge Story, it is entirely clear that his view cannot at this time be freely adopted without violence to what has long been regarded as accepted principles controlling the discretion of a court of equity in this class of cases. The United States supreme court has probably most nearly approached the view suggested by Judge Story. In *Mechanics Bank of Alexandria* v. *Seton, 1 Pet. 299, 305,* Mr. Justice Thompson, delivering the opinion of that court, says: "But notwithstanding this, distinction between personal contracts for goods and contracts for lands is to be found laid down in the books as a general rule, yet there are many cases to be found where specific performance of contracts relating to personalty have been enforced in chancery, and courts will only view with greater nicety contracts of this description than such as relate to land." See, also, *Barr* v. *Lapsley, 1 Wheat. 151.* In our own state contracts for the sale of chattels have been frequently enforced and the inadequacy of the remedy at law, based on the characteristic features of the contract or peculiar situation and needs of the parties, have been the principal grounds of relief. *Furman* v. *Clark, 11 N. J. Eq. (3 Stock.) 306; Cutting* v. *Dana, 25 N. J. Eq. (10 C. E. Gr.) 265, 271; Rothholz* v. *Schwartz, 46 N. J. Eq. (1 Dick.) 477, 481; Gannon* v. *Toole (N. J. Eq.), 32*

*Atl. Rep. 702; Hurd* v. *Groch, 51 Atl. Rep. 278 (N. J. Eq.);*
*Duffy* v. *Kelly, 55 N. J. Eq. (10 Dick.) 627, 629; Law* v. *Smith,*
*68 N. J. Eq. (2 Robb.) 81.*

I think it clear that the present case falls well within the prin-
ciples defined by the cases already cited from our own state.
Complainant's factory has a capacity of about one million cans
of tomatoes. The season for packing lasts about six weeks. The
preparations made for this six weeks of active work must be car-
ried out in all features to enable the business to succeed. These
preparations are primarily based upon the capacity of the plant.
Cans and other necessary equipments, including labor, must be
provided and secured in advance with reference to the capacity
of the plant during the packing period. With this known
capacity and an estimated average yield of tomatoes per acre the
acreage of land necessary to supply the plant is calculated. To
that end the contract now in question was made, with other like
contracts, covering a sufficient acreage to insure the essential
pack. It seems immaterial whether the entire acreage is con-
tracted for to insure the full pack, or whether a more limited
acreage is contracted for and an estimated available open market
depended upon for the balance of the pack; in either case a
refusal of the parties who contract to supply a given acreage to
comply with their contracts leaves the factory helpless except to
whatever extent an uncertain market may perchance supply the
deficiency. The condition which arises from the breach of the
contracts is not merely a question of the factory being compelled
to pay a higher price for the product; losses sustained in that
manner could, with some degree of accuracy, be estimated. The
condition which occasions the irreparable injury by reason of
the breaches of the contracts is the inability to procure at any
price at the time needed and of the quality needed the necessary
tomatoes to insure the successful operation of the plant. If it
should be assumed as a fact that upon the breach of contracts
of this nature other tomatoes of like quality and quantity could
be procured in the open market without serious interference with
the economic arrangements of the plant, a court of equity would
hesitate to assume to interfere, but the very existence of such
contracts proclaims their necessity to the economic management

53

of the factory. The aspect of the situation bears no resemblance to that of an ordinary contract for the sale of merchandise in the course of an ordinary business. The business and its needs are extraordinary in that the maintenance of all of the conditions prearranged to secure the pack are a necessity to insure the successful operation of the plant. The breach of the contract by one planter differs but in degree from a breach by all.

The objection that to specifically perform the contract personal services are required will not divest the court of its powers to preserve the benefits of the contract. Defendant may be restrained from selling the crop to others, and, if necessary, a receiver can be appointed to harvest the crop.

A decree may be advised pursuant to the prayer of the bill.

By reason of the manner in which the facts on which this opinion is based were stipulated, no costs will be taxed.