**FRANK LESLIE FRASER and SOUTHEASTERN TERMINAL and STEAMSHIP COMPANY, v. SOL COHEN, BEN COOPER and DAVID SHORE, co-partners doing business under the firm name and style of SOL COHEN & CO., and JACK COOPER.**

31 So. (2nd) 463                            June Term, 1947
July 8, 1947                                     En Banc
Rehearing denied July 31, 1947

*Ausley, Collins & Truett* and *Shutts, Bowen, Simmons, Prevatt & Julian,* for appellant.

*Cleveland, Sibley & Davis* and *Harold Zinn,* for appellees.

BUFORD, J.:

Appeal brings for review final decree of the Circuit Court of the Eleventh Judicial Circuit of Florida in which that court by injunction requires the appellants Frank Leslie Fraser and the Southeastern Terminal and Steamship Company to deliver to the appellees Sol Cohen & Co. all bananas purchased and received by appellants from J. Arismendi Trujillo at the ports of Barahoma and Puerto Plata in the Dominican Republic and requires the appellants to account to the appellees for profits derived by appellants from the purchase and sale of bananas from Trujillo which were delivered to the appellants at the ports of Barahona and Puerto Plata, Dominican Republic, since March 1, 1947.

The record shows that Trujillo is the brother of Raphael Trujillo and that he held a concession from the governing authority of the Dominican Republic for the exclusive shipment in export of bananas in the ports of Barahona and Puerto Plata.

The effect of this contract was to vest in J. Arismendi Trujillo an absolute monopoly on the export of bananas from the two named ports. The only worthwhile market for bananas produced in the Dominican Republic is the export market and bananas cannot be exported from the Dominican Republic without a permit from the governing authority to use the ports of the Republic for that purpose.

The record further shows that on May 6th, 1946, Jack Cooper made and entered into a contract with the appellees whereby Jack Cooper bound himself, his heirs and assigns, beginning on September 15, 1946, and continuing through

August 31, 1947, to sell and dispose to the appellees all the bananas which he purchases in the Dominican Republic and which are to be loaded and shipped from the ports of Barahona and Puerto Plata at the price of $1.30 per stem f.o.b. Dominican Republic, for all bananas shipped into the United States save and except the Port of New York and Jack Cooper by that contract bound himself during the life of the contract to sell and deliver to the appellees all the bananas which are loaded and shipped at the ports of Barahona and Puerto Plata. For this contract appellees placed on deposit with Cooper the sum of $10,000 in cash and bound themselves on or before August 15, 1946, to deposit an additional $38,000 with Cooper which money was to be held by Cooper to guarantee him against loss or damage that might result as a breach of the contract by the appellees. It was also provided that if appellees performed the terms of the contract then beginning October 15, 1946, Cooper would return to appellees, their heirs or assigns, the sum of $4,000 in cash and that if said contract should not be breached at any time Cooper would further return to appellees $4,000 in cash every thirty days thereafter until the amount of $48,000 had been returned to them; and it was provided that if at any time the appellees should fail or refuse to comply with any of the provisions of the contract or should breach the same, that the amount of cash then held by Cooper belonging to appellees should be forfeited to Cooper as liquidated damages for such breach.

It will be observed that the conditions of these contracts made the bananas, which were the subject matter of the contract, property of peculiar character and value which took these chattels out of the purview of the general rule that specific performance of the contract for the sale of chattels may not generally be granted by a court of equity. See Yulee v. Canova, 11 Fla. 9. This is also true because Cooper had and conveyed to the appellees a general or local monopoly of the subject matter at the ports named and those chattels were essential to appellees' business. See Pomeroy's Specific Performance, 3rd Ed. page 41, paragraph 15; Curtis v. Katz, 72 N. J. Equity 831, 66 Atl. 935; Southern Pipe Line Co. v.

Empire National Gas Co., 33 Fed. (2) 248; American Smelting Co. v. Bunker Hill, 248, Fed. 172.

Under the contract, supra, 156,000 stems of bananas were delivered to appellees on board ship at the ports named. Thereafter, and when Cooper's contract with appellees was in full force and effect and being faithfully performed, appellant Frazer entered into negotiations to procure from the Dominican Republic and J. Arismendi Trujillo the benefits of the Cooper contract, having at the time full knowledge that Cooper had contracted with the appellees as hereinbefore set forth and on about March 1st, 1947, a conference was had between Fraser, J. Arismendi Trujillo and Cooper, the result of which was (without the knowledge and consent of the appelles) that the $50,000 which Cooper had on deposit with Trujillo plus $60,000 bonus, making a total of $110,000, was paid to Cooper by Fraser handing that amount to Trujillo and Trujillo then and there passing it over to Cooper, and Cooper thereupon surrendered his contract to Trujillo. Upon this being so consummated Trujillo then contracted with Fraser to deliver to him the bananas at the ports named to be exported to the United States, thereby attempting to circumvent the performance of appellees' contract with Cooper. Fraser then contracted with Southeastern Terminal and Steamship Company, which company he dominated through his and his wife's ownership of stock therein, to receive all bananas delivered to its ships at the ports of Barahona and Puerto Plata by Trujillo and transport the same in export to the United States.

From and after March 1st, 1947, all bananas coming to the ports of Barahona and Puerto Plata were delivered to Southeastern Terminal and Steamship Company for Fraser and appellees' rights under the Cooper contract were entirely disregarded.

On April 25, 1947, appellees filed their bill of complaint in the Circuit Court, supra, wherein they set out at great length the facts and circumstances of the several transactions and prayed a declaratory decree establishing that Frank Leslie Fraser and Southeastern Terminal and Steamship Company took and received their right and exclusive franchise to export bananas from the ports of Barahona and Puerto Plata subject

and subordinate to the franchise and right vested in the appellees under the Cooper contract and decreeing and establishing that Frank Leslie Fraser and Southeastern Terminal and Steamship Company are charged with the duty to deliver to the appellées all bananas received by them at the ports of Barahona and Puerto Plata in conformance with appellees' contract. They prayed an injunction against the defendants Fraser and Southeastern Terminal and Steamship Company from denying plaintiffs the privilege, franchise and right exclusively to export bananas from the ports of Barahona and Puerto Plata in the Dominican Republic and prayed a decree temporarily enjoining and restraining and prohibiting Fraser and Southeastern Terminal and Steamship Company and all persons claiming by, through or under them, from exporting bananas from the ports of Barahona and Puerto Plata in the Dominican Republic. They further prayed a decree mandatorily requiring and enjoining the defendants Fraser and Southeastern Terminal and Steamship Company to deliver to the plaintiffs all bananas received for export at the ports of Barahona and Puerto Plata by the defendants upon the payment of the price required of the plaintiffs, supra. They prayed that the court decree that all rights, franchises and privileges held by the defendants Fraser and Southeastern Terminal and Steamship Company to export bananas from the ports of Barahona and Puerto Plata are privileges and franchises held by them in trust for the plaintiffs in this suit and that the said defendants be required to perform the contract entered into between the plaintiffs and the defendant Jack Cooper. They prayed that the court required each of the defendants to account to the plaintiffs for all loss sustained by the plaintiffs by reason of the receipt by Fraser and Southeastern Terminal and Steamship Company of bananas at the ports of Barahona and Puerto Plata in the Dominican Republic since March 1, 1947. They also prayed that the decree quiet plaintiffs' title and right to the exclusive franchise to export bananas from Barahona and Puerto Plata in the Dominican Republic against the claims of the defendants and all persons claiming by, through or under them for a period of time provided in plaintiffs' contract, supra.

As is observed hereinbefore, the decree granted the relief prayed.

Appellants' first contention is that J. Arismendi Trujillo is a necessary party to this suit. We do not agree with this contention. Trujillo has no rights or equities which would be affected by the result of this suit. Whether appellants or appellees prevail, his duties and liabilities will remain the same. When Fraser paid the consideration for which Cooper surrendered his contract he became entitled to the rights of Cooper under that contract and likewise became burdened with the obligations which Cooper had undertaken under and pursuant to that contract, Mr. Pomeroy in his Equity Jurisprudence, Vol. 2, page 1101, says:

"When a person is acquiring rights with respect to any subject matter, the fact whether he is so acting with or without notice of the interests or claims of others in or upon the same subject-matter is regarded throughout the whole range of equity jurisprudence as a most material circumstance in determining the extent and even the existence of the rights which he actually acquires. In conformity with this view, the general rule has been most clearly established, that a purchaser with notice of the right of another is in equity liable to the same extent and in the same manner as the person from whom he made the purchase. The same rule may be thus expressed in somewhat different language; a person who acquires a legal title or an equitable title or interest in a given subject-matter, even for a valuable consideration, but with notice that the subject-matter is already affected by an equity or equitable claim in favor of another, takes it subject to that equity or equitable claim."

The mere fact that Fraser and Trujillo attempted to circumvent the rights acquired by appellees under their contract with Cooper of which they had knowledge by having Cooper physically surrender his contract to Trujillo whereupon Trujillo entered into the new contract with Fraser does not affect the rights of the parties other than those rights would have been affected by direct transfer and assignment by Cooper of his contract with Trujillo to Fraser.

It is next contended that the court did not have jurisdiction of the subject-matter of the suit. This contention is based on the premise that the subject-matter of the suit (bananas) was beyond jurisdiction of the court. This suit is in personam and the court having jurisdiction of the necessary parties, the suit may be maintained and remedy granted which directly affects and operates upon the person of the defendant and not upon the subject matter, although the subject-matter is referred to in the decree and the defendants may be ordered to do or to refrain from certain acts toward it. This conclusion is supported in Pomeroy's Equity Jurisprudence where on page 164, Sec. 135, it is said:

"In the vast variety of equitable remedies, there are of course, some which directly affect the person of the defendant, and require some *personal* act or omission on his part, and these are still enforced, and can only be enforced, *in personam*. In regard to all other classes, the statutes of our states have, as a general rule, either made them operative *per se* as a source of title, or as conferring an estate or right, or have given into effect. This modern legislation has not, however, deprived a court of equity of its power to act *in personam* in cases where such an affect is necessary to maintain its settled jurisdiction; as, for example, where the parties being within its jurisdiction, the subject-matter of the controversy, whether real or personal property, is situated within the territory of another state or nation."

And, on page 3165, Sec. 1318, it is said:

"The power to act *in personam,* though their remedies, is still held by all courts of equity, even in presence of the foregoing legislation. Of this nature must always be the remedies when the subject-matter, either real or personal property, is situated beyond the territorial jurisdiction of the court, in another state or country. The jurisdiction to grant such remedies is well settled. Where the subject-matter is situated within another state or country, but the parties are within the jurisdiction of the court, any suit may be maintained and remedy granted which *directly* affect and operate upon the person of the defendant, and not upon the subject-matter, although the subject-matter is referred to in the decree, and the

defendant is ordered to do or to refrain from certain acts toward it, and it is thus ultimately but *indirectly* affected by the relief granted. As examples of this rule, suits for specific performance of contracts, for the enforcement of express or implied trusts, for relief on the ground of fraud, actual or constructive, for the final accounting and settlement of a partnership, and the like, may be brought in any state where jurisdiction of defendant's person is obtained, although the land or other subject-matter is situated in another state, or even in a foreign country."

See also Bethel v. Bethel, 92 Ind. 318, McMillan v. Barber Asphalt Paving Co., 151 Wis. 48, 138 N.W. 94.

Under this contention the appellants also insist that the allegations of the bill of complaint in this case do not bring it within the purview of Section 87.02 Fla. Statutes 1941 (same F.S.A.) as proper subject-matter to be reached by declaratory decree. It would be hard to think of a case which would more clearly come within the purview of our statutes authorizing declaratory decrees and judgments. Here the court is asked to construe the contract between Cooper and the appellees and to determine what effect the action and manipulation between Fraser and Trujillo and Cooper had on plaintiffs rights under that contract, and to determine whether or not, under the facts and circumstances alleged, Fraser and Southeastern Terminal and Steamship Company are now bound to perform the Cooper-Sol Cohen Co. contract. This is clearly within the purview of Sec. 87.01, 1945 Supplement Fla. Statutes (same F.S.A.), which provides, inter alia,

"The Circuit Courts may render declaratory decrees, judgments or orders as to the existence or non-existence: Of any immunity, power, privilege or rights; or (2) of any fact upon which the existence or nonexistence of such immunity, power, privilege or right does or may depend, whether such immunity, power, privilege or right now exists or will arise in the future. Any person seeking a declaratory decree, judgment or order may, in addition to praying for a circuit court declaration, also pray for additional, alternative, coercive, subsequent or supplemental relief in the same action."

So the statutes contemplate the adjudication of the rights, status and other equitable or legal relations existing between the parties by reason of the contract relied upon and also that after this has been determined the court may proceed, pursuant to proper pleading in that regard, to grant such relief as may be proper pursuant to a judgment fixing the status of the parties under the contract.

Appellant's fourth question involves the contention that Chapter 87 of Fla. Statutes 1941, 1945 Cumulative Supplement, violates Section 5, 11 and 12 of Article V and Section 2 of Article XI of the Constitution of Florida in that it abolishes the distinction between law and equity. We do not conceive that these statutes have that effect or that the procedure followed in this case deprives the defendant of any legal rights.

Question Five challenging the rights of specific performance of a contract for the sale of a chattel has been hereinbefore disposed of.

The same observation applies to the Sixth Question.

In appellants' 7th question they challenge the right of a decree for specific performance on petition of the plaintiffs because they say that under the contract between Cooper and plaintiffs there was no mutuality of remedy. This position might be tenable were it not for the fact that appellants could have no adequate remedy at law because the contract involved a peculiar subject-matter, that is all the bananas delivered for export at two named ports in the Dominican Republic, and while the contract provides the measure for Cooper's damage in the event of its breach by appellees, there was no such provision in the event of the breach by Cooper. The subject-matter (bananas) is of such a peculiar character that the breach of the contract may be deemed to cause irreparable injury, the amount of which cannot be determined by a court of law and the contract is, therefore, subject to equitable enforcement. See Dade Enterprises Inc. v. Wometco Theatres Inc., 119 Fla. 70, 160 Sou. 209.

Appellants' 8th question challenges the right of enforcement of the contract because of its monopolistic character and cites the cases of Stewart et al. v. Sterns & Culver Lbr. Co. 56 Fla. 570, 48 So. 19; Ricou v. Crossland et al., 81 Fla. 574,

88 So. 380. We do not think that the rule enunciated in those cases has any application to the case at bar. The contract between Cooper and appellees did not tend to create any monopoly of the banana market anywhere in the United States and it was only intended to give appellees a monopoly on a certain source of supply, which source of supply was all the bananas delivered for shipment at the ports of Barahona and Puerto Plata in the Dominican Republic. That was no more an unlawful monopoly than was the purchase of the crop of tomatoes involved in the case of Curtis v. Katz, supra.

The effect of the monopolistic feature of the contract was to provide appellees with a certain source of supply of a certain commodity in a foreign country delivered on board ships at certain sea ports which resulted in giving the commodity purchased peculiar value to the appellee and thereby made that contract enforceable in equity, although chattels only constituted its subject-matter.

Appellants' question 9 challenges the sufficiency of the evidence to support the allegations of the bill of complaint. The Chancellor found the proof sufficient and a perusal of the record fails to reveal any reversible error in this regard or otherwise.

For the reasons stated, the decree is affirmed.

So ordered.

THOMAS, C. J., CHAPMAN, ADAMS and BARNS, JJ., concur.