TANNER MOTOR TOURS OF NEVADA, Ltd., a Nevada Corporation, Appellant, *v.* T. N. BROWN, dba YELLOW CAB COMPANY, LEE SPEIRS, dba BOULDER CAB COMPANY, and JOHN DOE NO. 1 Through 45, BRIGG SHAW, and ESTATE OF C. W. LANE, Respondents.

No. 3811

February 16, 1955.                    280 P.2d 291.

*John H. McNamee* and *Jones and Pursel,* all of Las Vegas, for Appellant.

*Harry E. Claiborne* and *Jones, Wiener & Jones,* all of Las Vegas, for Respondents.

## OPINION

By the Court, BADT, J.:

The question presented for determination by this appeal is whether the provisions of sec. 1973, N.C.L. 1929, prohibiting any member of a board of county commissioners from voting on a contract extending beyond his term of office invalidated a contract between Clark County and appellant granting the latter the exclusive right to solicit ground transportation business inside the terminal or administration building at the county's airport, and exclusive parking places at such terminal. The question is further narrowed to a determination of whether the uniform Municipal Airports Act, adopted by the Legislature of Nevada in 1947, amended or superseded sec. 1973 in the matter of the county's contracts conferring privileges of this nature.

Clark County, owning and operating a public airport some four miles south of the city of Las Vegas, called the Clark County Public Airport, had, as lessor, on November 12, 1948, entered into contracts of lease with Transcontinental & Western Air, Inc., United Air Lines, Inc., Western Air Lines, Inc. and Bonanza Airlines, Inc., respectively. These leases had to do with the rights of the respective lessees to use the airport for the landing and taking off of airplanes. In such leases the county

covenanted to make adequate and reasonable arrangements by contract, franchise or otherwise with one or more public carriers necessary to supply ground transportation service to the passengers of the lessees from the airport to the city of Las Vegas and environs, and from such points to the airport. The county agreed that the services for such ground transportation should be rendered at reasonable rates and charges, that the carriers be required to give prompt, courteous and efficient service, etc. One month later, under date of December 28, the county entered into the contract herein involved with Tanner Motor Tours of Nevada, Ltd., under which the latter agreed to be bound by the county's covenants with the air lines companies, and in particular, to furnish limousine service to the patrons and passengers of the airport, to provide ground transportation to them and their baggage, to have such service immediately available to all such air passengers at all times of the day or night, to respond promptly to all calls for service, to have its cars neat and clean and in excellent running condition, to furnish them with competent and experienced licensed drivers, neat, clean, courteous and efficient, which said drivers should observe all traffic laws and regulations and drive with due caution to afford maximum safety and comfort to passengers, to have sufficient cars or limousines available to accommodate the number of persons requiring transportation, and likewise to supplement their service in case of unusual congestion of flights, etc. Under the contract the county in turn granted the appellant the exclusive right to solicit business inside the terminal or administration building and on the ramp in front of the building, and agreed to prohibit other taxicab companies from soliciting business inside or immediately in front of the building. The county further granted appellant the exclusive right to park its cars in the area immediately in front of the building, and agreed to restrict other taxicabs or limousines from parking

within the area, which was specifically defined. Appellant also agreed to furnish U-Drive cars, sight-seeing buses, etc. to such extent as reasonably necessary to meet the demand therefor. For the privileges granted, appellant agreed to pay the county $300 a month or 10 percent of its gross receipts for such transportation service, whichever sum was greater. It also agreed to pay the county $25 a month for desk space, telephone privileges etc. in the administration building.

The term of the agreement was from January 1, 1949, to December 31, 1953, a period of five years, with an option to appellant to renew the agreement for an additional five years on sixty days' written notice. Such term extended beyond the term of office of all of the commissioners of Clark County voting for the authorization of the execution of the contract.

Appellant commenced its action in the court below against the respondents to enjoin their soliciting of business and to enjoin their parking of their vehicles in violation of the exclusive rights granted appellant by the county, and for damages. The district court granted a motion to dismiss the action for plaintiff's failure to state a claim upon which relief could be granted, N.R.C.P. 12(b) (5), on the ground that the contract on which the plaintiff relied was prohibited by our statute.

Section 1973, N.C.L. 1929, reads as follows: "No member of any board of county commissioners within this state, shall be allowed to vote on any contract which extends beyond his term of office." Such statute was adopted by the legislature of this state in 1895, when air transportation was an unknown art. In 1937 the legislature added to the purposes for which the right of eminent domain might be exercised, the acquisition of airports, air navigation facilities and aerial rights of way. In the same year, by another act, the legislature fixed the procedure whereunder air transportation companies could acquire real property for airports, etc. In 1945 the legislature authorized county commissioners to lease county properties to others for not to exceed twenty

years upon published notice, directly repealing, so far as in conflict, the restrictions of sec. 1973 N.C.L. These legislative acts do not concern us in this appeal but are of historical interest only. In 1947, Nevada adopted the uniform Municipal Airports Act. Sections 293.20–293.49, N.C.L. 1943–1949 Supp. The broad scope of the act may be seen from its title, which is:

"An Act relating to aeronautics; providing for acquisition, construction, maintenance, operation, and regulation by municipalities and counties of airports and air navigation facilities within or without the state, and declaring such to be a public purpose; authorizing eminent domain proceedings; providing tax exemptions for municipal airports and income thereof; authorizing leasing of airports, supplying of services in airport operation, and liens to secure payment thereof; granting extra territorial jurisdiction; authorizing penalties for violation of municipal ordinances and regulations; providing for appropriations, levying of taxes, issuance of bonds, and acceptance of federal and state aid; validating prior acquisitions, actions and bond issues; authorizing joint action by municipalities and other public agencies; providing for mutual aid between municipalities; and to make uniform the law with reference to public municipal airports."

Section 8 of the act, being sec. 293.27, N.C.L. 1943–1949 Supp., reads as follows:

"In operating an airport or air navigation facility owned, leased, or controlled by a municipality [defined to include county], such municipality may, * * * enter into contracts, leases, and other arrangements with any persons.

"(a) Granting the privilege of using or improving such airport or air navigation facility or any portion or facility thereof, or space therein for commercial purposes;

"(b) Conferring the privilege of supplying goods, commodities, things, services or facilities at such airport or air navigation facility; or

"(c) Making available services to be furnished by the municipality or its agents at such airport or air navigation facility.

"In each case the municipality may establish the terms and conditions and fix the charges, rentals or fees for the privileges or services, which shall be reasonable and uniform for the same class of privilege or service and shall be established with due regard to the property and improvements used and the expenses of operation to the municipality."

Section 293.38, id., reads as follows: "A municipality may enter into any contracts necessary to the execution of the powers granted it, and for the purposes provided by this act." Section 293.49, id., repeals all acts or parts of acts inconsistent with the provisions of the act.

In our opinion both the language of the act and a practical consideration of the nature of the operation concerned serve to establish the clear intent of the legislature in connection with such operations to relieve the operating municipalities from the hampering restrictions of sec. 1973. We cannot reasonably credit the legislature with intent to limit within the brief period of a county commissioner's term of office the extent of a contract governing the extensive and complex operations involved in operating a municipal airport.

In many respects the act itself is wholly inconsistent with such an intent. We note the definite grant of authority in sec. 293.27 above quoted authorizing a contract precisely such as the one here involved and also authorizing a county to "establish the terms and conditions" thereof. We note, too, the repealer clause and the section authorizing contracts necessary to the execution of the powers granted and for the purposes provided in the act.

Three other sections might also be mentioned in this respect. Section 14 of the act, sec. 293.33, N.C.L. 1943–1949 Supp., authorizes municipalities and counties to issue long-term bonds whose proceeds may be used for acquisition, construction, development and equipping of

airports. Section 293.34, id., validates bonds theretofore issued and ratifies and validates the execution of leases and contracts which "would have been authorized had this act been in effect at the time * * *." Section 293.40, id., authorizes agreements between two or more public agencies pursuant to concurrent ordinances or resolutions of their respective bodies for the general purposes of the act and provides that "each such agreement shall specify its duration * * *."

While it may properly be said that the salutary purpose of sec. 1973 was clear in order to prevent fraud and favoritism, it is just as clear that in enacting the uniform Municipal Airports Act the legislature, in realistic appreciation of the necessities and requirements of modern air transportation, recognized that sec. 1973 should not apply. We therefore hold that section to have been repealed by the uniform Municipal Airports Act insofar as it may be held to concern the activities covered by that act.

The district court's dismissal of the action because the contract on which the county commissioners voted extended beyond their term of office, was based upon its conception of the nature of the function contemplated by the county's contract with appellant—a subject which we find it unnecessary to discuss. Nothing in the record indicates that the 1947 Municipal Airports Act was ever presented to the district court. It is not even mentioned in the opinion of the learned district judge.

As the contract pleaded by the appellant was authorized by the Act of 1947, which repealed all parts of sec. 1973 inconsistent therewith, it follows that neither the contract nor the act of the county commissioners authorizing the same was void by reason of the limitations of sec. 1973. It was therefore error to dismiss the action on account of the limitations of said statute.

The judgment is reversed with costs, and the case remanded for further proceedings.

MERRILL, C. J., and EATHER, J., concur.