HARLEY E. HARMON, ARTHUR OLSEN, LOU F. LaPORTA, ROBERT T. BASKIN AND NORMAN WHITE, SUCCESSORS BY ELECTION TO HARLEY E. HARMON, ARTHUR OLSEN AND CLESSE M. TURNER, AS THE BOARD OF CLARK COUNTY COMMISSIONERS, THE GOVERNING BODY OF CLARK COUNTY, NEVADA, AND LAS VEGAS–TONOPAH–RENO STAGE LINES, INC., A NEVADA CORPORATION, AND SEBASTIAN F. MIKULICH, APPELLANTS, v. TANNER MOTOR TOURS OF NEVADA, LTD., A NEVADA CORPORATION, RESPONDENT.

No. 4531
4
January 8, 1963     377 P.2d 622

[Rehearing denied February 13, 1963]

*Foley Brothers,* of Las Vegas; *Richard Hanna* and *Robert F. List,* of Carson City, for Appellants Las Vegas-Tonopah-Reno Stage Lines, Inc., and Sebastian F. Mikulich.

*John F. Mendoza,* District Attorney, Clark County, for Appellants County Commissioners.

*George Rudiak,* of Las Vegas, for Respondent.

# OPINION

By the Court, THOMPSON, J.:

This litigation came about as the result of a dispute over which one of two competing common carriers has the exclusive limousine ground transportation franchise for servicing the Las Vegas airport. Las Vegas-Tonopah-Reno Stage Lines, Inc. (LTR) and Tanner Motor Tours of Nevada, Ltd. (Tanner) each claim such franchise because of certain action taken by the Board of Clark County Commissioners (Board) as the governing authority of the Las Vegas airport. Tanner's claim is based upon a bid submitted pursuant to invitation, and the Board's acceptance thereof on November 9, 1959. LTR's claim is based upon a written agreement with the Board, made April 1, 1960, despite its prior acceptance of the Tanner proposal. The lower court found in favor of Tanner. The judgment entered directed the Board to execute and specifically perform a written contract with Tanner; nullified the written contract which the Board had made with LTR; and enjoined LTR from interfering with the exclusive franchise in Tanner thus adjudged. LTR and the Board appeal. Before considering the merits we must dispose of a preliminary motion.

I. *Tanner's motion to dismiss the Board's appeal.* The Board's notice of appeal was defective under NRCP 72(b) and 73(b) in that it did not purport to appeal from any appealable order or judgment. The appeal was taken from the findings of fact and conclusions of law. Such defect is the basis for Tanner's motion to dismiss the Board's appeal. Were the Board the sole appellant, and the record otherwise silent, we would grant the motion. However, such is not the case before us. The

coappellant LTR properly perfected its appeal. In addition, the record discloses that, within the time designated by NRCP 73(a) for taking an appeal, all parties, i.e., Tanner, LTR and the Board, stipulated that the appeals of LTR and the Board could be consolidated. Cf. Commercial Credit v. Matthews, 77 Nev. 377, 365 P.2d 303. As the jurisdiction of this court over the subject matter of the case was properly invoked by the appeal of LTR, we shall deem the defect of the Board's notice of appeal to be an irregularity, not jurisdictional in nature. Misner v. Stange, 208 Mich. 680, 176 N.W. 417. We therefore deny Tanner's motion to dismiss the Board's appeal. Having thus concluded to entertain the Board's appeal, we shall also grant its motion to adopt the briefs of its coappellant LTR.

II. *Basic questions to be resolved.* We believe that the judgment below must be affirmed. There are multiple issues. For clarity, the factual information necessary to the determination of each issue will be related as that issue is discussed. Five major and numerous subsidiary points are raised, the major ones being: First, does NRS 244.315, requiring the Board (County Commissioners) to advertise for bids in letting contracts where the aggregate thereof exceeds $1,000, apply to an exclusive franchise to furnish ground transportation service to the Las Vegas airport—or, is this subject governed by the Municipal Airports Act, NRS 496.010–496.290? Second, was an exclusive franchise granted Tanner by the Board, i.e., did those parties enter into an agreement? Third, was the "memorandum" of agreement, expressing the consideration, legally sufficient to satisfy the statute of frauds, NRS 111.220? Fourth, was the agreement properly the subject of a judgment directing its specific performance? Fifth, were the Board and LTR entitled to a jury trial as a matter of right? We turn to discuss these questions.

1. *The Municipal Airports Act governs.* From January 1, 1949 through October 20, 1959, Tanner, pursuant to a written agreement with the Board granting it an exclusive franchise, had provided all forms of ground transportation service to the Las Vegas airport.

On September 21, 1959, the Board directed its clerk to publish an invitation for bids for the limousine franchise at said airport, such bids to be opened on October 20, 1959. In response to such invitation LTR and Tanner (and one other with whom we are not concerned) submitted written bids. LTR proposed to supply such service for a period of ten years, and pay therefor a 15 percent commission on the moneys received to and from the airport. Tanner offered to supply the service for a like period and pay for the franchise $3,600 per year, in advance, or 10 percent of the gross proceeds, whichever is greater, to be adjusted annually on the anniversary date of the contract. On October 29, 1959, the airport manager recommended the Board's acceptance of the Tanner proposal. On November 9, 1959, the Board, by resolution, and pursuant to the recommendation of the airport manager, accepted the Tanner bid because it was the "highest qualified bidder due to the fact that a minimum guarantee was offered." What thereafter occurred will be subsequently referred to. For the purpose of resolving the first question, the foregoing facts supply a sufficient background.

The Board and LTR contend that the Tanner bid was not submitted by the highest responsible bidder within NRS 244.315(3) [requiring the contract to be let to the *lowest* responsible bidder] believing that the term "lowest responsible bidder" must be construed to mean the "highest responsible bidder" when the Board is receiving rather than paying out money; that the bid of LTR would, in fact, produce more revenue, as indicated by the gross proceeds of prior years; that there was no question as to the "responsibility" of the two competitors, each being responsible, and concluding that the Board, as a matter of statutory mandate, was required to accept the LTR bid. We need not determine such contentions for we agree with the lower court and Tanner that the provisions of NRS 244.315 do not apply to this case.

In Tanner Motor Tours v. Brown, 71 Nev. 73, 280 P.2d 291, we held that § 1973, NCL 1929, prohibiting any member of a board of county commissioners from voting on a contract extending beyond his term of office, was

repeated by the Municipal Airports Act insofar as it concerned activities covered by that act, and that a five-year contract to furnish ground transportation service for the Las Vegas airport was, therefore, lawful.[1] The Tanner Motor Tours v. Brown decision is persuasive, though not absolute authority, for our view herein that NRS 244.315 has no application. The Board and LTR insist that NRS 496.090 of the Municipal Airports Act and NRS 244.315 can be read together, and each be given full effect without doing violence to either; that such was not the case in Tanner Motor Tours v. Brown. We do not agree that the mentioned sections can be read together. They are basically inconsistent.

NRS 496.090 permits the Board, in operating an airport, to enter into contracts and leases and "establish the terms and conditions and fix the charges, rentals or fees for the privileges or services, which shall be *reasonable and uniform* for the same class of privilege or service and shall be established with due regard to the property and improvements used and the expenses of operation." Such is the statutory standard established to guide the Board in making a contract or lease concerned with the operation of an airport. A simple example will serve to prove that such standard is not compatible with the "lowest responsible bidder" mandate of NRS 244.315 (3). Suppose the limousine ground transportation service was granted to more than one carrier, i.e., on a nonexclusive basis, the Board (though it chose not to do so here) could lawfully enter into more than one contract for the supplying of such service, if the fees fixed therefor were reasonable and uniform. Is it not apparent that, in such supposed circumstance, the bidding provisions of NRS 244.315 (3) could not apply? We think so. The incompatibility of NRS 244.315 with NRS 496.090 is thus revealed, causing us to conclude that they may not be read in pari materia. Indeed, NRS 244.315 applies to the letting of all contracts "except as

---

[1] The ruling in Tanner Motor Tours v. Brown has since been codified. See NRS 495.050 and 495.060.

otherwise provided by law." We believe that a contract to supply ground transportation service to a municipal airport is squarely within the applicable provisions of the Municipal Airports Act, and consequently excluded from NRS 244.315 by the express terms of the latter. Accordingly, we hold that NRS 244.315 requiring the Board (County Commissioners) to advertise for bids in letting contracts where the aggregate thereof exceeds $1,000, does not apply to a contract to furnish ground transportation service to the Las Vegas airport.[2]

2. *The Board made an agreement with Tanner.* Having initially decided to entertain the Board's appeal (discussion, point 1, supra) we are compelled to resolve the questions as to whether an agreement was made with Tanner and, if one was made, whether it satisfies the statute of frauds and is properly the subject of a judgment directing its specific performance.

We have related that the Board advertised for bids; that Tanner submitted its proposal and that the Board, by resolution, accepted Tanner's offer on November 9, 1959. The advertisement, proposal and acceptance established a meeting of the minds on the following elements—the parties, the subject matter, the consideration and the contract term. Notwithstanding this fact, the Board urges that the so-called agreement is fatally deficient in that it contains no reference to, nor provision for, many essential and additional elements necessary to a ground transportation franchise.[3] It directs our attention to the total absence of provisions regarding the terminal points of service, maintenance of vehicles, the furnishing of competent drivers, space at the terminal building, the keeping of books and records, indemnification, assignability and sundry other items. The

---

[2]Use of the bidding process as a means for consummating a contract for airport ground transportation service is not precluded. Such a procedure may be selected by the Board without regard to NRS 244.315.

[3]Had LTR alone appealed, its standing to raise the mentioned issue might be subject to question. However, we do not decide the matter because the Board, as the other party to the alleged agreement with Tanner, may properly raise all issues regarding the making and the enforcibility thereof.

lower court supplied such absent provisions by reference to the written agreement, as amended from time to time, under which Tanner had been furnishing the ground transportation for many years. Whether it properly did so depends upon whether the evidence will support a conclusion that the contracting parties (Board and Tanner) on November 9, 1959 (the date of the acceptance of Tanner's bid), *intended* to incorporate such provisions. See: Reno Club v. Young Investment Co., 64 Nev. 312, 182 P.2d 1011, 173 A.L.R. 1145. We believe that it does.

The resident manager of Tanner testified that, through conversations with the county commissioners before November 9, 1959, he was led to believe that the new agreement would be the same as the old agreement, except as modified by the terms of the invitation for bids, and the bid submitted. One of the county commissioners testified that the advertisement for bids was "under the old contract." Some time after the acceptance of Tanner's bid by the Board on November 9, 1959, the district attorney was instructed to prepare a written agreement. During the course of a conversation with the commissioners about such written agreement and when it would be ready for signing, the resident manager of Tanner was again advised that the new contract would be the same as the old except as modified by the bid itself. The foregoing evidence, without more, supplies a sufficient base for the following finding of fact made by the lower court: "It is a fact that both Plaintiff and Defendants Harley E. Harmon, Arthur Olsen and Clesse M. Turner, as the Board of Clark County Commissioners, contemplated that the formal contract for the exclusive limousine service at said airport would contain therein all the terms of the old contract between said parties dated December 28, 1948, except to the extent that the same should be modified by the bid of the Plaintiff which was accepted by said Defendant on the 9th day of November, 1959."

Despite such finding, supported by substantial evidence, the Board directs our attention to the paramount

fact that it never executed a formal contract with Tanner, and argues that it never intended to be bound by its resolution accepting Tanner's bid. Heavy reliance is placed upon Dolge v. Masek, 70 Nev. 314, 268 P.2d 919, wherein we held that the parties were not bound by an oral agreement because the record disclosed an intention that there would be no contract until a written document was finally signed. We cannot agree that Dolge is applicable here. The resolution of acceptance of the bid must be deemed evidence of an intent by the Board to be bound thereby. To hold otherwise would render the proceedings (invitation for bids, their reception, and the acceptance of one) meaningless and a sham. We hold, therefore, that binding obligations arose from Tanner's bid and its acceptance by the Board, notwithstanding the subsequent failure to prepare and sign the contemplated formal agreement. Garfielde v. United States, 93 U.S. 242, 23 L.Ed. 779; L. G. Arnold, Inc. v. City of Hudson, 215 Wis. 5, 254 N.W. 108; cf. Micheletti v. Fugitt, 61 Nev. 478, 134 P.2d 99.

We must consider one additional contention before leaving this topic and turning to the next. The Board points out that the commencement date of the new agreement is not mentioned in either the invitation for bids, the bid, the resolution of acceptance, nor, of course, in the old agreement between the Board and Tanner. The absence of this provision is urged as a bar to the existence of the claimed new agreement. Tanner concedes that a commencement date is an essential term. However, it argues that subsequent conduct of the parties is relevant to establish their intention as of November 9, 1959 regarding the commencement date, and that such conduct determined that date to be December 1, 1959. We agree with Tanner. On December 16, 1959, Tanner, by check, paid the County $3,600 as the guaranteed annual payment under the new agreement covering limousine service for the airport from December 1, 1959 to November 30, 1960. The check was delivered to the airport manager who deposited it to the account of Clark County. Said payment was accepted and retained by the

County. Thereafter Tanner changed its mode of payment to conform with its bid, and without protest from the Board. Though the record contains evidence indicating that the Board was not aware of such payment until April 1960, and that such payment was made at a time when Tanner knew that the Board was negotiating with LTR (despite its acceptance of the Tanner bid), such evidence serves only to create a conflict which the trial court resolved against the Board. The conduct of the airport manager, as an agent of the Board, in accepting payment in advance of the guaranteed annual sum as provided for in Tanner's bid and the County's acceptance thereof may be deemed to be conduct of the Board.[4] Cf. Maurice L. Bein, Inc. v. Housing Authority, 157 Cal. App.2d 670, 321 P.2d 753; County of Lincoln v. Fischer, 216 Or. 421, 339 P.2d 1084.

3. *The statute of frauds problem.* NRS 111.220(1) provides that every agreement which, by its terms, is not to be performed within one year from the making thereof, shall be void, unless such agreement, or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party charged therewith. The Tanner proposal which the Board accepted was to provide limousine airport transportation service over a 10-year period. It could not be performed within one year and is, therefore, squarely within the mentioned statute. Cf. Stanley v. Levy & Zentner Co., 60 Nev. 432, 112 P.2d 1047, 158 A.L.R. 76.

The Board and LTR ask us to declare that the request for bids, the bid of Tanner submitted in response thereto, and the Board's acceptance of the Tanner proposal, when considered together, are not legally sufficient as a "note or memorandum" expressing the consideration of the alleged agreement to satisfy the statute of frauds. LTR, as a stranger to the alleged agreement between the Board and Tanner, is without standing to

[4] The airport manager was, in a very real sense, the "right arm" of the Board in supervising the airport. Books and records regarding all fares received were to be made available for his inspection; he had authority to adopt and enforce rules re parking, solicitation by taxis, etc.

seek such a declaration. The defense of the statute of frauds is personal, and available only to the contracting parties or their successors in interest. Stitt v. Ward, 142 App.Div. 626, 127 N.Y.S. 351; Schuster v. Pennsylvania Turnpike Commission, 395 Pa. 441, 149 A.2d 447. Nor shall we honor the Board's request in this regard, for the record contains substantial evidence upon which to base an estoppel against the Board to assert such a claim.

Following acceptance of the Tanner bid, the Board assured Tanner that a formal written agreement would be prepared for signature. In reliance, Tanner continued to provide limousine service at the airport, paid $3,600 as the minimum guarantee for the ensuing year, and purchased two new 1960 model limousines at the cost of about $9,000. We acknowledge the general rule that, in the absence of fraud, a promise to reduce an agreement to writing is not, standing alone, a basis for invoking an estoppel against raising the statute of frauds in defense. Union Car Advertising Co. v. Boston Elevated Ry. Co., 26 F.2d 755, 58 A.L.R. 1007; McLachlin v. Village of Whitehall, 114 App.Div. 315, 99 N.Y.S. 721. It is likewise true, as a general rule, that part performance of an agreement within the "one year provision" of the statute of frauds, without more, will not preclude the bar of the statute. Nehls v. William Stock Farming Co., 43 Nev. 253, 184 P. 212, 185 P. 563. However, where both occur, i.e., a promise to reduce an agreement to writing and part performance by the promisee, an estoppel is properly invoked and the main agreement enforced. Seymour v. Oelrichs, 156 Cal. 782, 106 P. 88; Alaska Airlines v. Stephenson, 217 F.2d 295, 15 Alaska 272; Interstate Co. v. Bry-Block Mercantile Co., 6 Cir., 30 F.2d 172; annot., 6 A.L.R.2d 1053. We conclude, therefore, that the Board, in the instant case, is estopped to rely upon NRS 111.220 as a defense to this action.

4. *Specific performance was proper.* It is next urged upon us that the remedy of specific performance is not available to Tanner because: there exists an adequate remedy at law for breach of contract and damages; the alleged agreement between the Board and Tanner is too

uncertain to be specifically enforced; and, there is absent mutuality of remedy. We do not agree that the lower court erred in directing the Board to execute a formal contract with Tanner and thereafter specifically perform the same.[5]

A. *The legal remedy is not adequate.* Equity has recognized that a contract awarding an exclusive franchise is subject to specific performance at the instance of the franchise holder. Fraser v. Cohen, 159 Fla. 253, 31 So.2d 463; Turner v. Hampton, 30 Ky.L. 179, 97 S.W. 761. The legal remedy is deemed inadequate primarily because of the difficulty in fairly determining damage. The case before us is exemplary in this respect. The franchise covers a 10-year period. The money to be paid the Board yearly is predicated upon gross receipts (with a guaranteed minimum payment). What the future will reveal in this respect must await the event; it cannot be forecast with any degree of certainty. Fleischer v. James Drug Stores, 1 N.J. 138, 62 A.2d 383. The inability of any court to make an appropriate damage award for breach of contract, had Tanner requested same, is evident.

B. *The agreement is not uncertain.* As this suit in equity is an affirmative proceeding to procure the performance of obligations, a clear and precise understanding of the terms of the contract is normally required. Annot., 65 A.L.R. 7, 102. The contract must be reasonably certain as to its subject matter, its stipulations, its purposes, its parties and the circumstances under which it was made. 4 Pomeroy, Equity Jurisprudence, p. 1042; cf. Dodge Bros. Inc. v. Williams Estate Co., 52 Nev. 364, 287 P. 282. In our discussion under point two of this opinion, relating to the terms of the agreement in question, it was pointed out wherein the evidence supported the finding made below that the contracting parties

---

[5]Again, we doubt LTR's standing as a stranger to the contract, to raise this issue, but do not decide the point because the coappellant Board does have standing.

intended to incorporate the provisions of their prior written agreement, as amended from time to time. That agreement is specific, detailed and certain. Hence, there can be no problem in this regard.

C. *Regarding mutuality.* In Turley v. Thomas, 31 Nev. 181, 101 P. 568, involving different circumstances, we considered whether mutuality of remedy need exist as a condition to granting specific performance. In that case, specific performance was decreed even though mutuality was not present. The rule of mutuality of remedy as declared in Fry on Specific Performance 286 (3d ed.), to which the opinion made reference, was not followed. The Turley decision reflects one of the many exceptions to the "mutuality of remedy" rule. Whether that rule has validity today is doubtful. Justice Cardozo, in Epstein v. Gluckin, 233 N.Y. 490, 135 N.E. 861, 862, made this observation: "If there ever was a rule that mutuality of remedy existing, not merely at the time of the decree, but at the time of the formation of the contract, is a condition of equitable relief, it has been so qualified by exceptions that, viewed as a precept of general validity, it has ceased to be a rule today * * *. What equity exacts today as a condition of relief is the assurance that the decree, if rendered, will operate without injustice or oppression either to plaintiff or defendant. * * *. Mutuality of remedy is important insofar only as its presence is essential to the attainment of that end. The formula had its origin in an attempt to fit the equitable remedy to the needs of equal justice. We may not suffer it to petrify at the cost of its animating principal."

The following authorities are in accord with Justice Cardozo's observation, and represent the modern view, which we believe sound: Fleischer v. James Drug Stores, 1 N.J. 138, 62 A.2d 383; Sharpless-Hendler Ice Cream Co. v. Davis, 16 Del.Ch. 315, 147 A. 305; Driebe v. Fort Penn Realty Co., 331 Pa. 314, 200 A. 62, 117 A.L.R. 1091; Guzzi v. Czaja, 163 Pa.Super. 597, 63 A.2d 426; Cities Service Oil Co. v. Kuckuck, 221 Wis. 633, 267 N.W. 322; VanZandt v. Heilman, 54 N.M. 97, 214 P.2d

864, 22 A.L.R.2d 497; Temple Enterprises v. Combs, 164 Or. 133, 100 P.2d 613, 128 A.L.R. 856; 3 Williston, Contracts, 2567 (§ 1442, Rev.Ed.); Restatement, Contracts § 372 (1932). We adopt the Restatement view (supra) and hold that if the agreed exchange can, with substantial certainty, be guaranteed to both parties, the fact that the remedy of specific performance is not available to one of the parties is not a basis for denying it to the other party.[6] In the instant case, the record supports a conclusion that the agreed exchange (Tanner's payment and service in return for an exclusive franchise) can be guaranteed each party with substantial certainty.

Thrown in as a part of the general contention that equitable remedies were not available to Tanner, is the Board's claim that injunctive relief was improper. Again, we cannot agree. An exclusive franchise is a property right. Injunctive relief is available to prohibit interference with it. Conway v. Taylor, 66 U.S. (1 Black) 603 (1861), 17 L.Ed. 191; Montgomery Enterprises v. Empire Theatre Co., 204 Ala. 566, 86 So. 880, 19 A.L.R. 987; Vicksburg Waterworks Co. v. Vicksburg, 185 U.S. 65, 22 S.Ct. 585, 46 L.Ed. 808; Boise Street Car Co. v. Van Avery, 61 Idaho 502, 103 P.2d 1107. Equitable intervention is needed to protect the vitality of an exclusive franchise, for the moment the right becomes common the franchise ceases to exist.

5. *The denial of a jury trial was not error.* This action was commenced by Tanner seeking injunctive relief against LTR prohibiting interference with the alleged agreement between Tanner and the Board, and directing the Board to execute a formal agreement with Tanner and thereafter specifically perform the same. Pursuant to NRCP 39, the Board and Tanner each demanded a jury trial of all issues so triable as a matter

[6]Though not expressed by brief or otherwise, the Board presumably contends that it could not have obtained specific performance because of the difficulty encountered in supervising and enforcing performance by Tanner over a 10-year period. Because of our holding regarding the "mutuality of remedy" rule, we need not discuss such presumed contention.

of right, and also of all issues not so triable. The lower court denied their demand. Such denial is assigned as error.

In support of the claimed error, comfort is sought from the United States Supreme Court opinion of Dairy Queen v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44. That case is not in point, for the complaint therein sought, among other relief, a money judgment for breach of contract for which an adequate legal remedy existed. Because of this, the court held that a jury trial demand as to that claim for relief should have been honored, and reversed the cause.

The case before us is quite different. The complaint seeks only equitable relief. We have already held that the necessary prerequisite to the existence of an equitable remedy, the absence of an adequate remedy at law, is present in this case. Under such circumstances, the Board and LTR were not entitled to a jury trial as a matter of right. Cf. Musgrave v. Casey, 68 Nev. 471, 235 P.2d 729; Lake v. Tolles, 8 Nev. 285; Crosier v. McLaughlin, 1 Nev. 348. Further, the request for an advisory jury (as to all issues to which they were not entitled to a jury as a matter of right) is addressed to the trial court's discretion. NRCP 39(c). Thus, we find no merit in this assignment of error.

We have mentioned herein that on April 1, 1960 the Board and LTR executed a formal written agreement granting the latter the exclusive limousine ground transportation franchise servicing the Las Vegas airport. The judgment below declared said agreement null and void and of no effect whatever.[7] We agree that the Board-LTR agreement is not effective to grant LTR the franchise in question. However, we express no opinion as to possible liabilities resulting from its execution.

The judgment below is affirmed.

BADT, C. J., and McNAMEE, J., concur.

---

[7]The judgment relates the date of the agreement to be March 8, 1960. We find only an agreement in the record dated April 1, 1960.