CITY OF RENO, A MUNICIPAL CORPORATION, APPELLANT AND CROSS–RESPONDENT, *v*. SILVER STATE FLY–ING SERVICE, INC., A CORPORATION, RESPONDENT AND CROSS–APPELLANT.

No. 5349

March 1, 1968                          438 P.2d 257

*Vargas, Bartlett & Dixon,* and *John C. Renshaw,* of Reno, for Appellant and Cross-Respondent.

*Streeter, Sala and McAuliffe,* of Reno, for Respondent and Cross-Appellant.

## OPINION

By the Court, BATJER, J.:

The appellant and cross-respondent (defendant below), City of Reno, a municipal corporation of the State of Nevada, hereinafter referred to as "Reno," leased to the respondent and cross-appellant (plaintiff below), Silver State Flying Service, a corporation, hereinafter referred to as "Silver State," various rights as a base operator at the Reno Municipal Airport, Washoe County, Nevada, commencing November 1, 1959, and terminating October 31, 1979. This agreement hereinafter referred to as the "base contract" contained the following renewal provision: "Lessee, may, if not then in default, at least one hundred days before the expiration of the term provided herein serve written notice on Lessor's Airport Manager of Lessee's desire to obtain an extension of the

within term for an additional period of ten years. Lessor and Lessee hereby mutually covenant and agree to negotiate as to the terms and conditions of said ten year extension of term and if such negotiations accomplish mutual understanding and agreement, City will extend such term as aforesaid subject to the terms and conditions arrived at by such negotiations. In any event, Lessee shall have the right of first refusal to extend the lease for such term and on the same conditions and terms offered to any other person for the uses contemplated in this Agreeement."

On October 30, 1964, the parties entered into a modification of the lease, hereinafter referred to as "modification agreement," which, in pertinent part, reads:  "1. Paragraph 1 of said "Agreement," shall be entitled to tie down local and itinerant aircraft in the area north of Lessee's hangar to the north airport boundary, which said area is bounded on the west by a barbed wire fence and on the east by the east end of Lessee's hangar.  2. This arrangement is temporary, and the area so set aside to Lessee shall be for its use only until Lessee perfects its relocation on the line in accordance with prior negotiations between the parties.  3. Said agreement of 30 November, 1959 shall in no way be changed by this modification."

On April 5, 1965, by a unanimous vote, the Reno City Council took action to immediately cancel the modification agreement and to terminate the base contract effective May 15, 1965.

On April 8, 1965, Reno sent a letter to Silver State notifying it of the City Council's action. On April 20, 1965, Silver State filed a claim against Reno in the total amount of $380,-024 for the anticipatory breach of the base contract and modification agreement, and on April 26, 1965, Reno denied the entire claim. Silver State then commenced this action on May 12, 1965.

The next day the City Council of Reno extended the cancellation notice for 30 days, and on June 15, 1965, the council purported to entirely rescind the notice. No significance, bearing on this case, appears to attach to this action of the City Council.

The trial below began on January 9, 1967, and at its conclusion the jury returned a verdict for Silver State awarding $115,200 damages for breach of the modification agreement of October 30, 1964, and $99,624 damages for breach of the base contract on November 1, 1959, for a total of $214,824.

This appeal is taken from the judgment entered pursuant to that verdict.

Silver State, early in the proceedings was allowed to amend its complaint to pray for exemplary damages in the amount of $500,000. Reno thereafter moved to dismiss Silver State's prayer for exemplary damages, and this motion was granted before the commencement of the jury trial.

On January 27, 1967, after the trial jury returned its verdict and judgment had been entered, Silver State moved for a limited new trial under NRCP 59(a)(7),[1] on the issue of punitive damages. On February 27, 1967, the trial court entered its order denying the motion for a limited new trial and the cross-appeal is taken from the denial of that motion.

As its assignments of error on appeal, Reno claims:

(a) It was error to submit to the jury, for its determination, the question of damages for the alleged breach of the right of first refusal, and to give instruction No. 24, because such right was too speculative and uncertain, and was not an enforceable contract right.

(b) It was error and a denial to defendant of a fair trial and its substantial rights, to admit into evidence plaintiff's Exhibit "Q" and plaintiff's Exhibit "R".

(c) The court erred in giving instruction No. 18.

(d) It was error to allow the jury to consider the modification of agreement and to refuse the defendant's proposed instruction because the term was too uncertain, and therefore was not an enforceable contract right.

(e) The court erred in refusing to grant appellant's motion for directed verdict.

(f) The court erred in its failure to instruct the jury that plaintiff may recover only present cash value of future profits.

The appellant first contends that the district court committed error when it gave Instruction No. 24,[2] and submitted to the jury for its determination, the question of damages for the alleged breach of the right of first refusal. We agree.

---

[1] NRCP 59(a)(7). "A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes or grounds materially affecting the substantial rights of an aggrieved party:

"* * * Error in law occurring at the trial and objected to by the party making the motion. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment."

[2] Instruction No. 24. "The right to negotiate for an extension of the lease together with a right of first refusal for the extension of the lease may be considered by you in your determination of damages. It can reasonably be expected that Silver State would renew its lease where there is no comparable rental space for its business."

1. We must first address attention to that portion of the renewal provisions which purports to give Silver State an option to renew both the base contract and the modification agreement, and we find that the renewal provision purporting to give an option is so indefinite and uncertain in all respects that it is in fact a nullity and unenforceable.

It is enough that the renewal clause is indefinite and uncertain, but added thereto is the burden of section 15(b)[3] of the base contract which renders not only the question of renewal, but the very continuation of the base contract subject to the rules, regulations and orders of the federal government.

Silver State relies on a series of cases holding that an option to renew, at a rental to be negotiated, is not too indefinite for specific performance, however, in this case Silver State's problem is far greater because the base contract is indefinite and uncertain not only as to rental but as to all terms and conditions of the proposed re-lease.

The case of Ablett v. Clauson, 272 P.2d 753 (Cal. 1954), an action for declaratory relief, trespass and injunction, dealt with an option for a renewal lease for a period of five years "upon terms to be then agreed upon." Holding the option to be unenforceable the court said, "The general rule regarding contracts to agree in the future is stated to be as follows: 'Although a promise may be sufficiently definite when it contains an option given to the promisor or promisee, yet if an essential element is reserved for the future agreement of both parties, the promise can give rise to no legal obligation until such future agreement. Since either party by the terms of the promise may refuse to agree to anything to which the other party will agree, it is impossible for the law to affix any obligation to such a promise.' 1 Williston, On Contracts (Rev.Ed. 1936), 131, § 45. The rule is well established in this state [citations], and, in conformity with the weight of authority in other states [citation], it has been held that an option agreement which leaves an essential term to future agreement is not enforceable. [Citations.]" See Roberts v. Adams, 330 P.2d 900 (Cal.App. 1958).

---

[3]15(b). "Lessor, in addition to any other rights to which it may be entitled by law or otherwise, may cancel this lease upon or after the occurrence of any one of the following events, by giving Lessee thirty (30) days advance notice in writing of its intention so to do:

"The existence or operation of any rule, regulation or order of the Federal Aviation Agency, directly or indirectly, requiring the discontinuance or substantial reduction of the use of the Airport for any of the purposes for which Lessee is authorized hereunder to use the same."

We next turn our attention to that part of the renewal provisions in the base contract which are claimed, by Silver State, to give it a 'right of first refusal' to re-lease the premises.

The base contract does not vest in Silver State an absolute right to a further term, but only a preferential right to negotiate all the terms, conditions, rent and duration of the renewal lease, conditioned on Reno's desire to lease the premises to anyone at the end of the present term.

Reno had the right to reject all offers or merely to convert the premises to its own use in connection with the entire airport operation.

The entire renewal provision, in the base contract, is too indefinite and uncertain to be regarded as a binding agreement and it amounts to a nullity and is unenforceable.

In the case of Southern Style Shops v. Mann, 4 S.W.2d 959 (Tenn. 1928), the court in construing a first refusal provision in a lease said: "This is no more than a request for an opportunity to negotiate and does not rise to the dignity of a contract.

"The clause in question was not intended to give complainant the right to renew, but only the right or option to negotiate for a renewal." In reaching this holding the Supreme Court of Tennessee adopted the following language from one of the lower courts: "The words used in the clause referred to suggest negotiation between the lessor and lessee looking to a possible renewal on terms to be agreed upon in future, and such words are incompatible with the idea of an existing right in the lessee."

In the present case, Reno and Silver State were looking to a possible renewal on terms to be agreed upon in the future and at the time of Reno's notice of revocation dated April 8, 1965, there was no existing right in Silver State for which damages could be properly awarded. See Frierson v. Gant, 134 S.W.2d 193 (Tenn. 1939); Camichos v. Diana Stores Corp., 25 So.2d 864 (Fla. 1946); R. J. Reynolds Realty Co. v. Logan, 3 S.E.2d 280 (N.C. 1939).

In Salomon v. Cooper, 220 P.2d 774 (Cal.App. 1950), the court said: "An agreement to agree at a future time is nothing and will not support an action for damages."

In the case of Levin v. Munk, 169 N.E. 82 (Ind. 1929), the court held: "The agreement as pleaded contained no terms, time lease was to run, or of rental to be paid. It was therefore without legal force and effect; it was void for uncertainty." See Leckrone v. Lawler, 118 N.E.2d 381 (Ind. 1954).

In the contract before us we find a similar situation, and following this line of authority, hold that because the right of first refusal provision is too indefinite and uncertain, Silver State is not entitled to any damages for a breach of the base contract or the modified agreement beyond October 31, 1979.

The respondent, Silver State, suggests that any defect in the renewal provisions of the base contract and modification agreement for want of being definite and certain is cured by NRS 496.090.[4] We do not agree.

2. In its second assignment of error, Reno maintains that its substantial rights were infringed and it was denied a fair trial when the lower court admitted Silver State's exhibits "Q" and "R".[5] Reno bases its contention upon the grounds that those two exhibits were inflamatory and prejudicial, and adversely influenced the jury in assessing damages.

The judge of the trial court has conceded that the admission of exhibits "Q" and "R" was error. Reno contends that to

[4]NRS 496.090. "1. In operating an airport or air navigation facility owned, leased or controlled by a municipality, such municipality may, except as may be limited by the terms and conditions of any grant, loan or agreement pursuant to NRS 496.180, enter into contracts, leases and other arrangements with any persons:

"(a) Granting the privilege of using or improving such airport or air navigation facility or any portion or facility thereof or space therein for commercial purposes.

"(b) Conferring the privilege of supplying goods, commodities, things, services or facilities at such airport or air navigation facility.

"(c) Making available services to be furnished by the municipality or its agents at such airport or air navigation facility.

"2. In each case the municipality may establish the terms and conditions and fix the charges, rentals or fees for the privileges or services, which shall be reasonable and uniform for the same class of privilege or service and shall be established with due regard to the property and improvements used and the expenses of operation to the municipality."

[5]Exhibit "Q" was a letter dated April 22, 1966, from Jack Ulstad, general manager of Sierra Aircraft Company to Joe Williams of Silver State Flying Service, to the effect that they had appointed Casair Inc., as the Piper dealer for the Reno trade area.

Exhibit "R" was a letter dated February 9, 1966 from George D. Rodgers, general manager of Sierra Aircraft Company, Piper Aircraft Distributor to Joe Williams of Silver State Flying Service to the effect that as soon as they could make other arrangements they would terminate Silver State's dealership and appoint someone else.

allow this judgment to stand would make a guessing game as to the effect of the error in the admission of the exhibits. This contention is without merit. The record reveals that exhibits "Q" and "R" were both written after Silver State filed its claim against Reno on April 8, 1965, and after it filed its complaint in this case on May 12, 1965, and the damages awarded Silver State by the jury were less than those claimed by Silver State in its claim and original complaint. The admission of the two exhibits did not adversely affect the substantial rights of the appellant, was not prejudicial, and the error is harmless within NRCP 61.[6]

3. In its third assignment of error Reno contends that by giving Instruction No. 18[7] the trial court invaded the province of the jury on a material issue of fact on which there was a conflict of evidence. This contention is not supported by a careful reading of the instruction.

That a notice was given by Reno to Silver State on April 15, 1965 is the only statement of fact in the entire instruction, and the fact is entirely uncontroverted. Every other expression in Instruction 18 is a statement of the law or the conclusion of law.

It does not violate the Nevada Constitution, Article 6 § 12.[8] When Reno states that Instruction No. 18 is a judicial pronouncement and an instruction to the jury on a disputed fact, it is simply misinterpreting its clear meaning. The authorities cited by Reno support its position, but that position cannot be accepted.

Instruction No. 18 only says that after Silver State's claim was rejected and it chose to file a law suit, Reno's course was

---

[6]NRCP 61. "No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

[7]Instruction No. 18. "Plaintiff was justified, if he so elected, to consider the lease terminated and sue for damages after the notice of April 8, 1965, Plaintiff could not be forced to enter into contracts or to abandon its right of action for damages."

[8]Nevada Constitution, Article 6, § 12. "Judges shall not charge juries in respect to matters of fact, but may state the testimony and declare the law."

to answer the lawsuit because nothing further could be done on the administrative level.

In Instruction No. 18, the court was not commenting upon a disputed fact or invading the province of the jury. It is well settled principal of law that an instruction can comment upon conclusory or undisputed fact. See Blom v. Kumbier, 81 N.W.2d 528 (Wis. 1957).

It is also clearly established that a court can instruct as to conclusions of law or upon the application of the law to the facts. See Wood v. Moore, 148 P.2d 91 (Cal.App. 1944); Thaller v. Skinner and Kennedy Co., 339 S.W.2d 487 (Mo. 1960); Simons v. Jennings, 46 P.2d 704 (Mont. 1935).

4. In its fourth assignment of error, Reno contends that the district court committed prejudicial error by allowing the jury to consider the modification agreement dated 30th October, 1964, because as a matter of law the term thereof was too uncertain and therefore not an enforceable contract right.

The only item of a contemporary nature in the supplemental agreement was the physical location of the tie-down area. It is obvious from a careful reading of the modification agreement that the phrase "This arrangement is temporary" refers to the tie-down area, and that all other terms and conditions not specifically recited in the modification agreement were adopted from the base contract.

A tie-down area was to be available to Silver State for the duration of the base contract. Only the eventual location of the permanent tie-down site was left to negotiations. Reno's contention that the modification agreement is too uncertain and not an enforceable contract right is therefor without merit.

5. Reno contends that the trial court erred in refusing to grant its motion for a directed verdict. The last sentence of NRCP 50(a), reads as follows: "If the evidence is sufficient to sustain a verdict for the opponent, the motion shall not be granted." The record, from the beginning of the trial to the time of the appellant's motion, is weighted with evidence sufficient to sustain a verdict for Silver State.

We find that the trial court was correct in denying Reno's motion for a directed verdict.

6. Reno, in its final assignment of error, claims the trial

court should have instructed the jury that the plaintiff (Silver State) may recover only present cash value of future profits.

We find that Reno was not entitled to an instruction on the question of present cash value of future profits. In the first instance, it produced no evidence, during the course of the trial to support such an instruction. The only suggestion in the record about the question of present cash value was a passing remark by counsel for the appellant in his final argument.

Secondly, Reno made no request to the trial court for an instruction on the question of present cash value and cannot now complain that the court failed to give the instruction.

In the case of Western & Atlantic Railroad v. Hughes, 278 U.S. 496 (1929), a similar situation arose and the court held: "The Railroad argues also that the charge failed to make it clear to the jury that, in computing the damages recoverable for the deprivation of future benefits, adequate allowance must be made, according to circumstances, for the earning power of money; that the verdict should be for the present value of the anticipated benefits; and that the legal rate of interest is not necessarily the rate to be applied in making the computation. Chesapeake & Ohio Ry. v. Kelly, 241 U.S. 485, 491; Gulf, Colorado & Santa Fe Ry. v. Moser, 275 U.S. 133. There is no room for a contention that the charge failed to state correctly the applicable rule. If more detailed instruction was desired, it was incumbent upon the Railroad to make a request therefor. Louisville & Nashville R.R. v. Holloway, 246 U.S. 525. It did not do so."

We now turn to Silver State's cross-appeal from the trial courts order denying its motion for a limited new trial, and we affirm the action of the lower court. Silver State cannot bring itself within the provisions of NRCP 59(a)(7).

No where in the record do we find any error of law occurring at trial, objected to by Silver State and touching on the question of punitive damages. Beyond the limitations of NRCP 59(a)(7), substantial justice would preclude Silver State from having a limited new trial on the question of punitive damages after the original trial jury had been discharged. Punitive damages cannot be awarded by a jury unless it first finds compensatory damages. Novack v. Hoppin, 77 Nev. 33, 359

P.2d 390; Gerlach Live Stock Co. v. Laxalt, 52 Nev. 191, 284 P. 310; Clark v. McClurg, 9 P.2d 505 (Cal. 1932).

Silver State cannot, after the trial of the case and the discharge of the jury, expect a new jury to be empaneled to re-hear the entire matter on the question of compensatory damages in order to get to the question of punitive damages. We do not reach the questions of whether or not punitive damages may be awarded against a municipality in this state, or whether or not punitive damages can be awarded for breach of contract.

The damages awarded to Silver State by the trial jury for the remaining fourteen (14) years of the base contract and modification agreement are affirmed. The damages awarded to Silver State for the ten (10) year extension suggested in the renewal provisions of the base contract are reversed and the total damages awarded to Silver State are reduced from $214,824 to $125,314. In all other matters the trial court is affirmed and the case is remanded with instructions to enter a judgment in conformity with this opinion.

THOMPSON, C. J., COLLINS, ZENOFF, and MOWBRAY, JJ., concur.