LOUIS WIENER, JR., APPELLANT, *v.* THE CITY OF RENO AND MAPES ENTERPRISES, INC., RESPONDENTS.

No. 6546

February 28, 1972                    494 P.2d 277

[Rehearing denied March 29, 1972]

*Lohse and Lohse,* of Reno, and *Wiener, Goldwater, Galatz & Raggio,* of Las Vegas, for Appellant.

*Robert L. Van Wagoner,* Reno City Attorney, for Respondent City of Reno.

*Cooke & Roberts,* of Reno, for Respondent Mapes Enterprises, Inc.

## OPINION

By the Court, THOMPSON, J.:

The appellant unsuccessfully sought to enjoin the City of Reno and Mapes Enterprises, Inc., from formalizing a concession agreement for specified concessions at the Reno International Airport, and has appealed to this court for relief.

Mapes Enterprises has been the concessionaire at the airport since 1959. In 1962 the base agreement was amended to allow Mapes, during a specified period in 1970, to give the City written notice of its desire to extend the lease for another ten years upon terms mutually to be agreed upon. If agreement was not reached, the City was to request bids from other parties, granting to Mapes, however, the "right of first refusal and the right to meet the terms of such bids or offers by making the same or a higher or better offer." If Mapes made the same

or a higher or better offer, the City agreed to grant the concession contract to Mapes.

Negotiations for an extension of the lease failed, and the City, faithful to its agreement, advertised for bids. The published notice to bidders explicitly advised that "the existing concessionaire has the right of first refusal and the right to meet the terms of the bid determined by the City as the best bid by making the same or a higher or better offer. Concessionaire has a reasonable time limit to meet the best offer and the City will permit the present concessionaire to 12:00 o'clock (noon) on December 21, 1970 to exercise that right. If the best offer is not met by the present concessionaire, the City Council will award a contract agreement to the party submitting the best proposal, or may reject all proposals as determined by the City Council."

Several bids were submitted to the City, and on December 14, 1970, the Council determined that the bid of Louis Wiener, Jr., was the best bid, but withheld action thereon until December 21 to allow the existing concessionaire to meet or improve upon Wiener's bid. On December 18, Mapes Enterprises submitted its proposal meeting the bid of Wiener and increasing the annual minimum guarantee to the City by approximately $1,000. On December 21 the City Council unanimously accepted the proposal of Mapes Enterprises.

1. Wiener's complaint for injunctive relief does not charge bad faith, fraud or collusion. Cf. Clark Sanitation, Inc. v. Sun Valley Disposal Co., 87 Nev. 338, 487 P.2d 337 (1971). It does not assert that the bidding process itself was unlawful, nor suggest that Wiener's bid was better than the proposal submitted by Mapes. Cf. Douglas Co. Board v. Pederson, 78 Nev. 106, 369 P.2d 669 (1962). There is not the slightest hint that the action of the City in granting the airport concessions to Mapes worked to the disadvantage of the City and the public interest. None of these claims is made.

The thrust of the complaint is that the 1962 amendment to the base agreement was invalid and unenforceable as between the parties thereto, and that such invalidity somehow nullified everything that followed. This contention rests upon the decision of City of Reno v. Silver State Flying Serv., 84 Nev. 170, 438 P.2d 257 (1968), where we held that a lease covenant granting the lessee the right of first refusal to extend the lease on the same terms offered to any other person was unenforceable as between the parties and irrelevant to the determination of damages in an action by the lessee for breach of the lease.

That decision is inapposite to this case. Here, there exists no dispute between the contracting parties. Neither of them considered the 1962 amendment to the base lease to be unenforceable. Each of them honored that agreement and fully performed according to its terms and are prepared to execute a formal concession agreement in the form supplied by the City. Cf. Harmon v. Tanner Motor Tours, 79 Nev. 4, 14, 377 P.2d 622 (1963). The district court correctly found that the City of Reno v. Silver State case, supra, has no bearing upon the merits of this litigation.

2. The City need not put airport concessions out to bid. NRS ch. 496, Municipal Airports Act; Reno, Nev., Municipal Code ch. 9.04.010–9.04.020. It may enter into private agreements for such concessions "upon such terms and conditions as the governing body deems proper" [NRS 496.090(3)], and under "such terms and conditions as are most advantageous to the city," Reno, Nev., Municipal Code, supra. This is the declared public policy. Accordingly, it must follow that the City, once having decided to bid, may impose thereon "such terms and conditions as are most advantageous to the city."

Although the bid form here used admittedly gave an advantage to the existing concessionaire, Mapes Enterprises, this manner of handling it also produced an advantage to the City. The bidding process was not chilled. Eight bids were received. All bidders knew that Mapes had the right to meet or improve upon the best bid and submitted their bids notwithstanding this knowledge. The entire procedure was open and above-board. The result of the procedure was to produce a higher return for the City and also to avoid disruption of the airport operation attendant upon a change of the concessionaire. In awarding the concession contract to Mapes, the Council apparently had in mind the municipal code direction to do so on "terms most advantageous to the city." This was proper. Clark Sanitation, Inc. v. Sun Valley Disposal Co., supra.

3. Our disposition of this appeal avoids any need to decide whether Wiener has standing to question the validity of right of first refusal contractually granted to Mapes by the City, or whether he is estopped to deny the validity of that contract provision, the notice to bidders and the bidding procedures employed, by reason of having submitted his bid with full notice and knowledge thereof.

Affirmed.

BATJER and GUNDERSON, JJ., concur.

MOWBRAY, J., dissenting:

I dissent.

On September 11, 1959, the City of Reno and Mapes Enterprises, Inc., signed a lease agreement covering certain concessions at the Reno Municipal Airport. The parties later amended their agreement, both as to the length of the lease and as to the procedures to be followed if the lessee, Mapes, elected to renew the lease. Under the terms of the amendment, the period of the lease was adjusted to run from January 1, 1960, to December 31, 1970. The renewal clause specified that if Mapes wished to renew the lease, notice of intention to do so had to be given in writing to the City within 180 days following January 1, 1970. The renewal clause further provided that in the event the City and Mapes could not reach an agreement prior to October 1, 1970, regarding the new rent to be paid the City for the renewal of the lease, then the City had the right to advertise for and accept bids for the lease of the concessions. Mapes notified the City on January 12, 1970, that it elected to renew the lease. The City and Mapes could not, from January 12, 1970, to September 29, 1970, reach any agreement on the amount of rent to be paid by Mapes for the new term of the lease. On September 29, 1970, the City voted to grant Mapes an additional period to negotiate the rent, to and including October 12, 1970. The parties failed to reach an agreement within the extended period. On October 12, 1970, the City denied an additional request by Mapes to extend the negotiation period. The City then decided that it was necessary to go to open bidding.

On November 9, 1970, the City approved the specifications and bid documents to be made available to public bidders. The Notice to Bidders, which was published in the Reno newspapers, stated that the sealed proposals to be submitted would be opened and read publicly on December 10, 1970, and that the City would make a determination no later than December 14, 1970, as to the best bid submitted. The notice further stated that Mapes would have the right to meet the terms of that best bid, by making the same or a higher or better offer. In the event that Mapes did not meet the designated best offer, the City could award the lease agreement to the party who had submitted the best proposal, or could reject all bids.

On December 14, 1970, as provided in the Notice to Bidders, the City determined that the bid of Appellant Louis Wiener, Jr., was the best bid. Thereafter, on December 18, 1970, Mapes submitted to the City a bid that it designated a first offer. The first offer also contained an "alternate bid" that

was to be considered by the City if Mapes's first proposal was rejected.[1]

The Reno City Council met on December 21, 1970, pursuant to the terms set forth in the Notice to Bidders, to award the contract. The Mapes and Wiener bids were the only proposals under discussion. The City decided that Mapes's first bid was not a better offer than the bid previously submitted by Wiener. The City then accepted Mapes's alternate bid. The effect of this procedure was to give Mapes two bids, while all other bidders were limited to a single bid.

Wiener then sought in the district court a preliminary injunction to prevent the City and Mapes from finalizing the lease agreement. After a hearing on the motion, the district judge denied it. Hence, this appeal.

With regard to the propriety of judicial review, it is generally agreed that the courts will not interfere with the *discretionary* actions of city officials absent fraud, corruption, or abuse of discretion. 10 E. McQuillin, The Law of Municipal Corporations § 29.83 (3d ed. 1966). In my opinion, that principle is not applicable on the facts of this case, since the court is reviewing the actions of the City in an area where there is no room for discretion in the face of overriding public policy considerations.

When the City, of its own volition, decides to award a municipal contract or lease agreement after seeking public bids, the courts should not hesitate to intercede where it is apparent that the bidding process established by the governmental agency, albeit in good faith, destroys the very principles of public policy that form the underlying basis of competitive bidding. The courts should scrutinize the conduct of the bidding process by any governmental agency when it appears that a violation of the public trust may be involved.

The principal issue on this appeal is addressed to the propriety of allowing a right of first refusal in a competitive bidding situation, where that right allows one bidding party to obtain an unfair advantage over the remaining bidders. It is a

---

[1]"ALTERNATE BID

"In the event the above proposal is rejected by the City, Mapes Enterprises, Inc. offers to meet the percentages bid by Louis Wiener, Jr. and to increase the minimum annual guarantee to $251,000 per year.

"If the bid of Louis Wiener, Jr. is, for any reason, withdrawn or disqualified, this bid and alternate bid are withdrawn and Mapes Enterprises, Inc. reserves its contract rights in regard to any other bid the City might determine to be the best bid."

generally recognized principle of law that the purpose of public bidding is to protect the public interest, i.e., to invite competition; to guard against possible favoritism, fraud, or extravagance; and to insure that the public is fully protected. McQuillin, *supra,* § 29.29.

On August 17, 1962, when the City and Mapes agreed upon the terms of the renewal procedure, the City was not required to invite public bids on the concession rights at the airport. See NRS 496.090 in the form in which it was in effect on August 17, 1962, and through April 3, 1967. Nor was the City required to invite public bids on such contracts under the current provisions of NRS 496.090, which became effective April 4, 1967. Nevertheless, the express terms of the lease renewal clause provided that such bidding would be required if the parties could not reach a new agreement within the time specified. Whether competitive bidding enters the picture by statutory requirement or by voluntary agreement, the bidding procedure used must be conducted reasonably and fairly and in such a way as to insure protection of the public interest. In my opinion, allowing Mapes to submit the same or a higher or better offer *after publication of all bids and designation of the best bid* rendered the competitive bidding process a sham.[2]

The right of first refusal is a valid and useful concept of contract law when it is applied in the appropriate context. But when such a right is given to a single party in competitive bidding for governmental contract awards, that procedure, in my opinion, should be held void, as being against the interests of the group to be protected—the public. When public bidding is deemed to be necessary, all prospective bidders must stand in the same position. Consequently, the bidding procedure in this case should be amended and then performed in a manner that conforms to the principles of public policy, as set forth herein.

No award should be given on the basis of the prior bidding procedure. To hold otherwise would result in the elimination of Mapes by judicial fiat. Strict adherence to the dictates of public policy requires that bids should be called for anew and the bidding process be completed in a proper manner, with all prospective bidders participating on an equal footing. I would therefore reverse and remand the case to the district court with

---

[2]What contractor bidding on a public project would spend the time, money, and effort to submit a valid, bona fide bid, knowing that another bidder would have the right to "outbid" him even after his bid was accepted as the "best bid"?

instructions to enter an order directing the City to submit the lease agreement to open bidding in accordance with the views just expressed.

ZENOFF, C. J., concurs.