GARY F. SPROUSE, An Individual, and DONALD C. HATCH and CHERYL HATCH, Husband and Wife, Appellants/Cross-Respondents, v. OLIVER W. WENTZ and JOANNA MAY WENTZ, Husband and Wife, Respondents/Cross-Appellants.

No. 19066

November 2, 1989                    781 P.2d 1136

598

[Rehearing denied March 6, 1990]

*Beckley, Singleton, DeLanoy, Jemison & List,* Las Vegas, for Appellants/Cross-Respondents.

*Lionel Sawyer & Collins* and *Paul Bancroft,* Las Vegas, for Respondents/Cross-Appellants.

## OPINION

*Per Curiam:*

This litigation arose from a series of transactions in which Sprouse and Wentz attempted to exchange their ranches along with other property and rights. The trial court ordered rescission of the ranch exchange agreement but awarded compensatory damages on other aspects of the agreement. The district court also awarded punitive damages against Sprouse.

Sprouse now appeals claiming that the punitive damage award was erroneous because it was not based on an underlying tort. Wentz cross-appeals claiming that the court should have ordered rescission of all agreements and that the court's finding that he converted sheep is without support in the evidence.

### Facts

In December 1980, Sprouse and Wentz met in Reno and signed a preliminary agreement covering the exchange of their respective ranches in Nevada and California. The parties met again in the succeeding two months to finalize their negotiations, and, late at night on February 9, 1981, the parties signed the final version of the exchange agreement. The agreement covered many areas, but the provisions which are pertinent to this appeal were as follows: (1) Wentz agreed to convey to Sprouse his Brown Valley Ranch in California; (2) Sprouse agreed to convey to Wentz the Duckwater and Copper Flat fee lands in Nevada (Nevada ranch), along with extensive BLM and Forest Service grazing rights, water rights and equipment; and (3) Wentz agreed to pay $1,371,945.00 as evidenced by a promissory note secured with a deed of trust on the Nevada ranch.

*The Livestock Option Contract and Changes to the Exchange Agreement*

At another late night meeting on March 18, 1981, the parties arranged for Wentz to take over operation of the Nevada ranch, even though for some reason the parties were unable to close the original exchange agreement. Accordingly, they executed an addendum to the exchange agreement providing for the operating arrangements. In addition, they also signed an addendum that gave Wentz an option to buy livestock from Sprouse (referred to later as "option livestock") and that sold to Sprouse certain livestock belonging to Wentz (referred to later as "bill of sale livestock"). Pursuant to these agreements, apparently made because of the ill-health of Clive Sprouse who had been operating the ranch, Wentz took over operations at the Nevada ranch.

On August 26, 1981, the parties met to close escrow on their transactions. Among other agreements, the following agreements were executed and delivered: (1) a deed from Wentz to Sprouse conveying the California ranch; (2) a promissory note and deed of trust from Wentz to Sprouse; (3) deeds from Sprouse to Wentz conveying the Nevada ranch; (4) an option to buy livestock from Sprouse to Wentz; and (5) a bill of sale conveying ranching equipment from Sprouse to Wentz.

*Failure of Consideration—Grazing Rights*

At the closing, Sprouse was to deliver the documents necessary to transfer the BLM and Forest Service grazing rights, without which the Nevada ranch was worthless to Wentz. Instead, Sprouse made no effort to secure those rights for Wentz. Apparently, the grazing rights were security on an indebtedness owed by Sprouse to a third party. But Sprouse made no effort to get the third party to release these rights. It was primarily this failure of Sprouse in securing the grazing rights for Wentz's benefit that ultimately prompted the district court to allow Wentz to rescind the exchange agreement.[1]

*The "Safari"*

After various extensions on the livestock option contract and after it became apparent to Sprouse that Wentz would be unable to exercise the option, Sprouse decided to take possession of the livestock which was in Wentz's possession at the Nevada ranch pursuant to the parties' earlier agreement by which Wentz took

---

[1]The district court's decision that Wentz could rescind the exchange agreement for failure of consideration due to Sprouse's failure to deliver the grazing privileges is not questioned in this appeal.

over operation of the ranch. Sprouse repossessed the livestock by self-help with what the parties refer to as a "safari." Sprouse gathered a number of men and trucks, and, as the district court put it, Sprouse and his men "swarmed down on Wentz's home in a fashion and with numbers sufficient to intimidate their victim. . . ." They herded the livestock to a neighboring farm; however, Sprouse later returned the livestock to Wentz's care.

## The District Court's Findings and Judgment

The district court first found a failure of consideration because of Sprouse's failure to transfer grazing rights and allowed Wentz to rescind the exchange agreement. The court also found that the livestock option contract was severable from the exchange agreement and found that Wentz had breached that contract by failing to give his bargained for consideration to Sprouse. Thus, the court awarded compensatory damages to Sprouse for Wentz's breach of the livestock option contract. Finally, the court ordered a punitive damage award of $650,000.00 against Sprouse for his conduct.

### Punitive Damages

The only issue in Sprouse's appeal is whether the district court properly awarded punitive damages. Sprouse claims that the court awarded punitive damages based on conduct that was not pleaded or tried as a tort cause of action. It appears from the decision of the district court that the court based its punitive damage award on what it termed "reprehensible conduct"; however, it does not appear that the court found in favor of Wentz on any cause of action that would support the punitive damage award.

In his counterclaim, Wentz set forth nineteen causes of action. These causes of action were for breach of contract, fraud and conversion. In connection with the two causes of action for fraud, Wentz included two causes of action containing allegations of fraud necessary for punitive damages. Nowhere in the counterclaim were malice or oppression alleged. In fact, except for the two fraud causes of action, the conversion cause of action is the only non-contract cause of action alleged, and the counterclaim does not allege fraud, oppression or malice in connection with that conversion cause of action. In addition, the prayer for relief asks for punitive damages only for fraud. The rest of the relief requested is in the form of compensatory damages and rescissory relief.

The district court expressly found that there was no fraud involved in this case and limited the grant of punitive damages

against Sprouse to oppression and malice. The court specifically based the punitive damages on Sprouse's failure to transfer grazing rights, his "safari," and his continued use of range, grazing rights and equipment without reimbursement to Wentz. The district court concluded that this conduct supported a punitive damage award of $650,000.00.

If the punitive damage award is not based upon a cause of action sounding in tort, the award must be stricken on appeal. *See* NRS 42.010. Also, compensatory damages must be awarded before the court can award punitive damages. City of Reno v. Silver State Flying Serv., 84 Nev. 170, 180, 438 P.2d 257, 264 (1968). However, Wentz claims that there are four tort causes of action upon which the court could have based punitive damages in this case: wrongful repossession, conversion, fraud, and tortious breach of contract.

Wentz first claims that he pleaded facts giving rise to a wrongful repossession cause of action. He states that the pleadings "provided the Sprouses with more than adequate notice that they sought both compensatory and punitive damages for the Sprouses' acts of wrongful repossession." While it is true that various acts that may have given rise to an action for wrongful repossession were contained in the Wentz counterclaim, the scattered facts did not give sufficient notice to Sprouse that a compensatory or punitive damage award would be sought on those facts.

For the most part, the facts that Wentz now claims he pleaded as a wrongful repossession cause of action appear merely as background facts for contract causes of action in the counterclaim. For example, one of Wentz's causes of action stated a claim for expenses incurred in caring for livestock after they were returned following the Sprouse "safari." In the prayer for relief with respect to this cause of action, Wentz sought an amount equal to the costs and expenses of caring for the livestock. Taken as a whole, this cause of action gave notice to Sprouse only of a contract cause of action, even though it included allegations about the "safari."

Sprouse points out that all along Wentz based his action on fraud, unconscionability and failure of consideration as a basis for rescission, restitution and punitive damages. The prayers for relief in the counterclaim were all based on these theories, and the Wentz pre-trial statement covered only these theories.

Wentz also asserts that, even if the pleadings did not fairly put Sprouse on notice of the wrongful repossession claim, the issue was tried by consent. NRCP 15(b) provides that "[w]hen issues

not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Since facts supporting a cause of action for wrongful repossession were proven at trial, Wentz asserts that a wrongful repossession cause of action was tried by consent.

It is true that trial by implied consent may arise if evidence relevant to the issue is received without objection. Schwartz v. Schwartz, 95 Nev. 202, 205, 591 P.2d 1137, 1140 (1979). However, we have also placed restrictions on finding implied consent. These restrictions are meant to insure procedural due process and a fair trial to parties such as Sprouse. In Ivory Ranch v. Quinn River Ranch, 101 Nev. 471, 473, 705 P.2d 673, 675 (1985), we rejected the argument that the trial court could find an affirmative defense of mutual mistake when the issue was not raised in the pleadings or the trial statements, and the district court did not notify the parties that it was considering the issue. The same problems are present in this case. The wrongful repossession action was not raised in the pleadings or the pre-trial statement. In addition, it is not clear that the district court really did consider wrongful repossession at all. As far as we can tell from the record, wrongful repossession apparently was never discussed in this case until this appeal. But if the district court did base its decision on a wrongful repossession cause of action, the court never notified the parties. Thus, allowing Wentz to recover punitive damages for wrongful repossession would most likely violate Sprouse's procedural due process and fair trial rights. *See id.*

Unlike Wentz's failure to plead the wrongful repossession action, Wentz did plead a conversion cause of action. In the ninth cause of action of the counterclaim, Wentz alleged that Sprouse took possession of various items belonging to Wentz and that Sprouse refused to pay for or return the items. In the prayer for relief associated with the ninth cause of action, however, Wentz did not mention punitive damages. Wentz also did not allege any conduct amounting to fraud, malice or oppression in connection with the conversion cause of action.

Wentz claims, without support, that the conversion cause of action was also tried by consent. He does not, however, make any claim that fraud, malice or oppression in connection with the conversion were tried by consent. One of these elements would be necessary to support an award of punitive damages, but Wentz shows nothing in the pleadings or the trial to indicate that the issue was considered. As discussed above, upholding the punitive damage award where Sprouse had no notice that he might be

subjected to punitive damages would violate Sprouse's procedural due process and fair trial rights.

Wentz also argues that the court's findings concerning Sprouse's conduct amounted to an express finding of fraud sufficient to support the punitive damage award. However, this argument ignores the fact that the district court expressly based its award of punitive damages on malice and oppression. Thus, even if Wentz could prove that the court's conclusions amounted to a finding of fraud, this proof would not justify the punitive damage award.

Finally, Wentz alleges that Sprouse's tortious breach of contract supports the punitive damage award. This allegation suffers from the same problems discussed above in connection with wrongful repossession: the respondent's answering brief is the first time tortious breach of contract is mentioned. Although various breach of contract actions were pleaded and tried, there is no indication in the record that Sprouse could have known that the court would base a punitive damage award on tortious breach of contract action or that Wentz was seeking such relief.

In sum, Wentz has vigorously tried to justify on appeal the court's punitive damage award. However, we are not convinced that any of these rationales for sustaining the punitive damage award would be fair to Sprouse. Sprouse rightfully believed from the pleadings and the pre-trial statements that Wentz sought punitive damages based only on fraud. To uphold the punitive damage award based on Wentz's reasoning now would deny Sprouse the opportunity to defend against a substantial punitive damage award. It is also contrary to the rule of law that punitive damages must be based on an underlying cause of action not based on a contract theory (see NRS 42.010; City of Reno v. Silver State Flying Serv., 84 Nev. 170, 180, 438 P.2d 257, 264 (1968)) to allow the district court to award punitive damages without even mentioning (or indicating to this court that there was) an underlying tort and then to allow the victorious party to go fishing for a supporting tort on appeal. Therefore, we must reverse the punitive damage award against Sprouse.

### Severability of Contracts

As his first issue in his cross-appeal, Wentz argues that the district court incorrectly held that the option contract for the livestock was severable from the exchange agreement for the

ranches. Based on this holding, the district court awarded compensatory damages to Sprouse for Wentz's breach of the option contract for livestock. Wentz contends that if the court had properly held that the two agreements were inseverable the livestock option contract would have been rescinded along with the exchange agreement, and Sprouse would not be entitled to any compensatory damages.

Whether two agreements constitute a single, inseverable contract or two separate contracts is a question of law. Linebarger v. Devine, 47 Nev. 67, 72, 214 P. 532, 534 (1923); Bethea v. Investors Loan Corp., 197 A.2d 448 (D.C.App. 1964). We have announced that "[w]hether a contract is entire, or separable into distinct and independent contracts, is a question of the intention of the parties, to be ascertained from the language employed and the subject-matter of the contract." Linebarger, 47 Nev. at 72, 214 P. at 534.

The district court held that the exchange agreement and the option contract were severable. In so finding, the court focused on the form of the agreements. The consideration for the exchange of ranches and the consideration for the option contract for the livestock were completely different. Under the exchange agreement, Sprouse agreed to convey his Nevada ranch in exchange for Wentz's California ranch and a promissory note, while, under the option contract, Sprouse agreed to hold open an offer to sell in exchange for payment of a price by Wentz.

While it is true that the consideration for the option contract is not intertwined with the consideration for the exchange agreement for the ranches, this analysis by the district court ignores the intention of the parties which, as we held in Linebarger, should be controlling concerning severability. Wentz cites to various points in the record that are quite convincing that Sprouse and Wentz intended all of their agreements to be inseverable. For example, the original exchange agreement provided for the sale of both ranch and livestock. When the livestock option was drawn up separately later due to changing conditions it was expressly incorporated into the exchange agreement. Wentz testified that, if he had acquired the livestock under the option and had not acquired the ranch, he would have had no place to put the livestock. And Sprouse himself testified: "I don't see that you can separate the two [agreements]."

It is apparent that the parties intended that the agreements not be severable. It is also apparent that the district court did not consider the parties' intentions when it came to the conclusion that the agreements should be severed into two contracts. Since the parties would not have contracted for the sale of livestock had

they not been contracting at the same time to exchange ranches, the district court erred in holding that the exchange agreement and the option contract were two separate contracts.[2] The district court should have allowed rescission of the livestock option contract along with the exchange agreement.[3] Thus, the court's award of compensatory damages based on Wentz's breach of the option contract must be reversed.

### Conversion of Livestock

Finally, Wentz claims that the trial court erred in placing the burden of proof of disproving Sprouse's claim that Wentz converted some of Sprouse's livestock on Wentz and that there is no substantial evidence to support the trial court's conclusion that Wentz converted the sheep. In Sprouse's complaint, he alleged that Wentz had failed to deliver "1,528 miscellaneous ewes, lambs, and other sheep." Subsequently, in its decision, the court stated that because Wentz had not presented any evidence to refute this claim in the complaint Wentz was liable to Sprouse for those sheep.

Sprouse conceded at oral argument that the evidence presented at trial did not go to prove the conversion alleged in the complaint. Therefore, we must also reverse the district court's award for missing livestock.

### Conclusion

In accordance with this opinion, we reverse the award of punitive damages against Sprouse. We also reverse the court's award of compensatory damages for Wentz's breach of the livestock option contract. And finally, we reverse the district court's award of compensatory damages to Sprouse for missing livestock. We affirm the decision of the district court in all other respects.

---

[2]Because we hold that the contracts were inseverable and should have been rescinded together, we need not address Wentz's contention that the livestock option contract was unconscionable.

[3]Sprouse contends that, if we hold that the exchange agreement and the option contract were inseverable, Wentz cannot rescind for failure of consideration because Wentz breached the option contract before Sprouse failed to transfer the grazing privileges. This argument, however, does not conform to the facts. Sprouse admits that Wentz breached the option contract on April 22, 1982, while the court found that the failure of consideration occurred at the closing of escrow on August 26, 1981. Thus, Wentz was entitled to rescission of the entire agreement because of Sprouse's failure to transfer the grazing privileges before the breach of the option contract occurred.